RILEY, RESPONDENT, *v.* BLACKER ET AL., APPELLANTS.

(No. 3,420.)

(Submitted September 25, 1915.    Decided November 3, 1915.)

[152 Pac. 758.]

*Equity—Deeds Absolute—Mortgages—Laches—Appeal and Error—Notice of Appeal—"Adverse Party."*

Appeal and Error—Notice of Appeal—"Adverse Party."
1. A defendant who had no interest in opposing the object sought by an appeal taken by his codefendant, and who could not be prejudicially affected by anything done by the supreme court on appeal, was not an "adverse party" within the meaning of section 7100, Revised Codes, upon whom it was necessary to serve notice of appeal.

Equity—Deed Absolute—Mortgage—Laches.
2. In an action to have a deed absolute declared a mortgage, *held*, that plaintiff was not entitled to equitable relief because of laches, it appearing that for eighteen months after the issuance of the deed, the grantee paid the taxes and collected the rents, the grantor asserting no claim and not tendering any repayment; that for eight months thereafter he stood idly by while the administrator of the estate of his grantee paid the taxes and caused extensive repairs to be made on the property, until by decree of distribution the title became vested in defendants, and that for eighteen months more he remained silent while the latter paid the taxes, collected the rents, and while the interest of one of them was sold on execution in his presence, the plaintiff offering no excuse or explanation for his delay in bringing suit.

[As to what constitute equitable mortgages, see note in 4 Am. St. Rep. 696.]

Same—Laches—Change of Condition of Parties—Effect.

    3. Laches, as a bar independent of the statute of limitations, means negligence in the assertion of a right, and exists where there has been unexplained delay of such duration or character as to render the enforcement of an asserted right inequitable.

Same—Laches—Death of Party—Effect.

    4. The death of one of the parties to a transaction, equitable relief in which is sought by one of them, is such a material change of their relations as renders the doctrine of laches applicable.

Same—Deed Absolute — Mortgage — Laches — Statutes — Redemption of Property.

    5. While in the case of a confessed or ascertained mortgage the rule obtains as declared by section 5732, Revised Codes, that a person having an interest in property subject to a lien may redeem it at any time after the claim is due and before his right of redemption is foreclosed, it is not controlling in a suit in which it is sought to establish by oral evidence that a deed absolute in form is in fact a mortgage, but in such an action the defense of laches may be interposed.

    [As to estoppel against assertion of title, see note in 48 L. R. A. (n. s.) 754.]

*Appeal from District Court, Broadwater County; John A. Matthews, Judge.*

SUIT by Harry Riley against Jacob Blacker and others. From an adverse judgment and an order refusing a new trial, certain defendants appeal. Reversed and remanded with directions.

*Messrs. Purcell & Horsky* and *Mr. E. H. Goodman,* for Appellant, submitted a brief; *Mr. Antone J. Horsky* argued the cause orally.

When a complainant seeks the aid of a court of equity, it is incumbent upon him to state in his complaint every fact, clearly and definitely, that is necessary to entitle him to relief, and if he omits essential facts, or states such facts therein as show that he is not entitled to relief, it is fatal to his action. (*Johnson v. McKinnon,* 45 Fla. 388, 34 South. 272.) Where it appears from the allegations in the complaint that a party has been guilty of laches, the question may properly be raised by demurrer. (1 Ency. Pl. & Pr. 832; *Kleinclaus* v. *Dutard,* 147 Cal. 245, 81 Pac. 516; *City of Leavenworth* v. *Douglass,* 59 Kan. 416, 53 Pac. 123; *Wilson* v. *Wilson,* 41 Or. 459, 69 Pac. 923; *Stewart* v. *Joyce,* 201 Mass. 301, 87 N. E. 613; *Phillips* v. *Piney Coal Co.,* 53 W. Va. 543, 97 Am. St. Rep. 1040, 44 S. E. 774; *Lansdale*

v. *Smith,* 106 U. S. 391, 27 L. Ed. 219, 1 Sup. Ct. Rep. 350; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299.) No artificial rule exists whereby we may determine whether one has been guilty of laches. Every case is governed chiefly by its own circumstances. (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Kleinclaus* v. *Dutard,* 147 Cal. 245, 81 Pac. 516; *Wilson* v. *Wilson,* 41 Or. 459, 69 Pac. 923.) One circumstance upon which the courts lay particular stress when considering the question as to whether or not one has been guilty of laches is the death of one of the participants in the transaction involved. (16 Cyc. 164; *Bell* v. *Hudson,* 73 Cal. 285, 2 Am. St. Rep. 791, 14 Pac. 791; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299; *German-American Seminary* v. *Kiefer,* 43 Mich. 105, 4 N. W. 636; *Wilson* v. *Wilson,* 41 Or. 459, 69 Pac. 923.)

Nowhere in the complaint does respondent explain his conduct in failing to make known to the administrator of said estate, the district court, or the heirs, the fact that he claimed the property in controversy as his own, nor does he anywhere explain why he did not object to the property being distributed to the heirs of Mrs. Blacker, but we find him silently asquiescing in everything that is done. As to one's duty in this respect, see *Foster* v. *Mansfield etc. R. Co.,* 146 U. S. 88, 36 L. Ed. 899, 13 Sup. Ct. Rep. 28.

"Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor." (27 Cyc. 971, 1016; *Badger* v. *Badger,* 2 Wall. 87, 17 L. Ed. 836; see, also, *Brown* v. *Buena Vista County,* 95 U. S. 157, 24 L. Ed. 422.) The facts set out in the complaint show that respondent's case is wanting in those essentials so vitally necessary to call into activity a court of equity, namely, conscience, good faith and reasonable diligence.

"The poverty of plaintiff is quite uniformly held to be no excuse for failing with reasonable promptness to assert his

rights." (16 Cyc. 169; *Carter* v. *Mayor etc. of Chattanooga* (Tenn.), 48 S. W. 117, 120; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299.)

The payment of taxes by the grantee in a deed is considered by the courts as evidence tending to negative the idea that the instrument was intended as a mortgage. (27 Cyc. 1014.)

*Messrs. Walsh, Nolan & Scallon,* for Respondent, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

Section 5723 of the Revised Codes provides as follows: "Every person having an interest in property subject to a lien has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed." By virtue of the provisions of this statute, the right being given to redeem until foreclosure takes place, no laches can possibly arise. This identical matter has been considered and disposed of by this court in the case of *Grogan* v. *Valley Trading Co.,* 30 Mont. 229, 76 Pac. 211. There, as in this case, an action was brought to have a deed, absolute on its face, declared a mortgage. There the time lapsing between the execution of the instrument and the institution of the suit was longer than here. There the property passed into the possession of a third party, it is true, with knowledge of existing equities, the conveyance, however, transferring the property being a warranty deed. Here we have the property passing to the heirs, who necessarily get the title only which the ancestor had. (See, also, *Hannah* v. *Vensel,* 19 Idaho, 796, 116 Pac. 115; *Ross* v. *Leavitt,* 70 N. H. 602, 50 Atl. 110; *Cross* v. *Allen,* 141 U. S. 528, 35 L. Ed. 843, 12 Sup. Ct. Rep. 67; Jones on Mortgages (5th ed.), sec. 330.) It is asserted, however, because in this instance the property had passed to the heirs, the legal status is changed. Not at all. The heirs simply acquired whatever the ancestor had, and whatever rights could be asserted against the ancestor as to the property, the same rights can be asserted against the heirs. They are not, in any sense, *bona fide* purchasers of the property. (*Coulson* v. *Coulson,* 180 Mo. 709, 79 S. W. 473; *McPherson* v. *Hayward,* 81

Me. 329, 17 Atl. 164; *McKenney* v. *Page,* 146 Ky. 682, 143 S. W. 382; *Chase* v. *Chase,* 20 R. I. 202, 37 Atl. 804.)

MR. JUSTICE SANNER delivered the opinion of the court.

This suit was commenced on June 30, 1911. The complaint avers that on November 9, 1907, the plaintiff executed a warranty deed in form conveying the title to a certain piece of property in Radersburg worth $1,500 to Mrs. Fannie Blacker, for the consideration of $1,200; that said deed was, in fact, intended as a mortgage to secure the payment of a loan by her to the plaintiff in the sum of $350, "which sum was to be repaid within a reasonable time, and at least one year," with interest at eight per cent; that on May 8, 1908, Fannie Blacker died intestate, and Jacob Blacker, her husband, was appointed administrator of her estate; that in the administration of her estate said property was treated as a portion thereof, was administered as belonging thereto, and the title to the same was by decree of distribution "duly made and entered" on December 29, 1909, vested in the defendants, who are the husband and children of Fannie Blacker; that ever since November 9, 1907, Fannie Blacker, while living, and Jacob Blacker, after her death, collected the rents of said premises, which amount to more than $350, with interest, over and above all expenses of collection and all expenditures on account of the property. The prayer of the complaint is that the deed be declared to be a mortgage; that the defendants account for the rent received; that the property be ordered conveyed to him; and that he have judgment for the difference between the amount of such rents and said original debt and interest.

A general demurrer to the complaint was overruled. Defendants answered, averring that, when the deed was executed, the value of the property was not to exceed $1,200, and that the plaintiff was indebted to Mrs. Blacker in that amount, with interest, denying that the deed was ever intended as a mortgage, and asserting affirmative defenses based upon laches, upon estoppel as to the defendant Capital City Brewing Company, and upon plaintiff's failure to present his claim against the estate.

The trial of the cause was strangely technical, considering the fact that no jury was in attendance. The record bristles with untenable objections, and much testimony which ought to have been received as tending to throw light upon the transaction was utterly rejected. Indeed, the cause is made to stand almost wholly upon the evidence presented by the plaintiff, and as to this adequate cross-examination was not allowed. Findings were made and a decree entered which not only commanded the defendants other than Anderson Blacker and the Capital Brewing Company to reconvey a thirteen-fifteenths interest in the property, but also adjudged that all of them, save the Brewing Company, pay the plaintiff sums of money aggregating $1,042.90. From that judgment, as well as from an order refusing a new trial, the defendants other than Anderson Blacker and the Capital Brewing Company have appealed.

The respondent contends that these appeals ought not to be [1] considered, because the notice of appeal was not served upon the nonappealing defendants. This is without merit. Neither Anderson Blacker nor the brewing company can be prejudicially affected by anything that may happen here, and they could have no interest in opposing the object sought to be obtained by these appeals. Therefore they are not "adverse," within the meaning of section 7100, Revised Codes, and service of notice upon them was unnecessary. (*Anderson* v. *Red Metal Co.*, 36 Mont. 312, 93 Pac. 44.)

The judgment cannot be affirmed. Considering the allegations [2] of the complaint with the evidence presented to support the same, we have a deed of warranty, absolute on its face and acknowledging the receipt of $1,200 as consideration, the effect of which is sought to be destroyed by these circumstances: That the property was in fact worth $1,500; that the consideration was in fact a loan of $350, for which no note or other evidence of indebtedness was given, to be repaid within one year; that there was an understanding, entirely oral, by virtue of which the deed was to operate, not as a conveyance, but as a mortgage to secure the repayment of the loan; that for a year and six months after

the deed was issued the plaintiff stood by, making no demands, asserting no claims, tendering no repayment, while his grantee paid the taxes, collected the rents, and died; that for nearly eight months longer he stood by, making no demands, asserting no claims, while the property was administered as part of his grantee's estate, while the administrator paid the taxes thereon and caused extensive repairs to be made, until, by decree of distribution, the title became formally vested in the defendants; that for another year and a half he stood by, making no objection, asserting no claim, while the defendants, as distributees under said decree, enjoyed the property, paid the taxes, collected the rents, and while, in his presence, the interest of Anderson Blacker was sold at public vendue to the Capital City Brewing Company by the sheriff; and the record is barren of explanation or excuse for the silence of plaintiff or for his delay in bringing his suit. That such a showing as this, instead of establishing any basis for equitable relief, must defeat such relief on the ground of laches, is, we think, beyond dispute, if laches be possible at all in a matter of this kind.

Laches, considered as a bar independent of the statute of [3] limitations, is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, ''Equity aids only the vigilant''; and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. Therefore has it often been held by this court that: While a mere delay short of the period of the statute of limitations does not of itself raise the presumption of laches (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315), yet ''good faith and reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Considerations of public policy and the difficulty of doing justice between the parties

[4]   are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may be; and this is particularly so where the relations of the parties have been materially altered in the meantime." (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Streicher* v. *Murray,* 36 Mont. 45, 92 Pac. 36; *Brundy* v. *Canby, supra.*)   What constitutes a material change of condition has been the subject of much judicial discussion and some judicial dissension; but whatever doubt there may be as to other circumstances, it never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such a change.   "A specific application of the general rule just stated is in the refusal of the courts to afford relief to one who has lain idly by until the important witnesses to the transaction involved have died.   Of course, the result is the same where the testimony so lost is that of participants in the transaction, who would be parties to the suit had they lived; but where such parties die, there are usually difficulties presented in procuring evidence and conducting the case, other than those arising from the loss of their own testimony, and relief is denied for that reason."   (16 Cyc. 163, 164; see, also, *Kavanaugh* v. *Flavin, supra; Bell* v. *Hudson,* 73 Cal. 285, 2 Am. St. Rep. 791, 14 Pac. 791; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299.)

The respondent insists, however, that laches in a matter of this kind is out of the question, because of the provisions of section [5]   5723, Revised Codes.   *Grogan* v. *Valley Trading Co.,* 30 Mont. 229, 76 Pac. 211, and some other authorities, are cited in support of this contention.   Section 5723 provides that "every person having an interest in property subject to a lien has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed"; and the decisions above referred to are authority for the proposition that in the case of a confessed or ascertained mortgage the statutory provision must be applied.   But this has nothing to do with the inquiry, upon oral evidence—peculiarly within equitable cogniz-

ance—whether the transaction was or was not a mortgage. In the very citation of counsel from Jones on Mortgages, fifth edition, sec. 330, we are informed that delay in such a case as this has "its bearing on the primary question of mortgage or no mortgage." This is necessarily so, for the principle embodied in the doctrine of laches "operates throughout the entire remedial portion of equity jurisprudence" (1 Pomeroy, Eq. Jur. [3d ed.], sec. 418), and instances where laches has been held a bar to inquiries of this character may be found in the following cases: *Schradski* v. *Albright,* 93 Mo. 42, 5 S. W. 807; *Maher* v. *Farwell,* 97 Ill. 56; *Fitch* v. *Miller,* 200 Ill. 170, 65 N. E. 650; *Landrum* v. *Union Bank,* 63 Mo. 48; *Chapman* v. *Bank of California,* 97 Cal. 155, 31 Pac. 896; *Goree* v. *Clements,* 94 Ala. 337, 10 South. 906; *Downing* v. *Woodstock Iron Co.,* 93 Ala. 262, 9 South. 177; *Conner* v. *Chase,* 15 Vt. 764.

Accepting the allegations of the complaint that Mrs. Blacker collected the rents in her lifetime, the plaintiff's delay is more than persuasive that he dared not make his present claim while she should be alive. These rents would amount to $480 for the year, within which, according to the complaint, his loan of $350 was to have been repaid, and to $720 at the time of her death. The contention of defendants is that, when the deed was given, the sum of $350 was paid; that this sum, together with prior advances, made a total of $1,200, the consideration named in the deed and intended as the purchase price of the property. However that may be, it is incredible that plaintiff should not have demanded a reconveyance as soon as the rentals collected by Mrs. Blacker sufficed to pay the loan of $350, with interest, if the allegations of his complaint are true.

It is fair to say, however, that the court received and seems to have credited testimony to the effect that no time was fixed for the repayment of the loan; that until September, 1908, plaintiff and his partner, Anderson Blacker, conducted a saloon upon the premises, paying no rent; that they were then succeeded in the possession by one Horsfeldt, who for a few months paid the rent, amounting to $40 per month, to the plaintiff (as the plaintiff

says), or by delivery of a team of horses to Riley & Blacker (as Anderson Blacker says) ; that Horsfeldt was succeeded by one Berg, who held up to the time of Mrs. Blacker's death, paying the same rent to the plaintiff (as the plaintiff says), or to Anderson Blacker (as Berg says) ; that Berg was succeeded by McCabe, who is still in possession, who paid no rent whatever to plaintiff or Anderson Blacker, but always paid either to the administrator or to a Townsend bank for the heirs.    But, whether the complaint or the evidence on this point be taken, the result is the same ; for the fact remains upon the plaintiff's own showing that he permitted his debt of but $350 to go unpaid, and the record title to the property worth $1,500 to stand in his grantee until by her death the possibility of a fair, full and satisfactory investigation of the transaction was gone.    He permitted the property to be administered as the property of his grantee and to be distributed as such to her heirs.    He permitted the administrator and the heirs to collect and keep the rents, sufficient for the payment of his debt twice over, to pay all the taxes, to make repairs, and to otherwise assert dominion over the property, and he permitted an interest in this property to be sold in his presence as belonging to Anderson Blacker—all this without protest, claim, or action during a period of more than three and a half years.    It is too much to ask of a court of equity that, under such circumstances, and after an inquiry necessarily one-sided, the plaintiff's transaction with the deceased, Mrs. Blacker, be declared other than what upon its face it purports to be.

The judgment and order appealed from are reversed, and the cause is remanded, with directions to dismiss the complaint.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.