ELLING ET AL., RESPONDENTS, *v.* FINE, APPELLANT.

(No. 3,752.)

(Submitted April 17, 1917. Decided May 4, 1917.)

[164 Pac. 891.]

*Real Property—Deeds Absolute—Mortgages—Burden of Proof —Laches.*

Deeds—Mortgages—Laches.
    1. Where, on the face of a deed absolute in form and an accompanying contract agreeing to reconvey, it clearly appears that the transaction was meant to constitute a mortgage, it will be so declared even if the mortgagor was guilty of laches in asserting his claim; for, "once a mortgage, always a mortgage."
    [As to absolute deed with agreement to reconvey, see note in 17 Am. Dec. 300.]

Same.
    2. Where papers of the character of the above contained no reference to a loan, no mention of any indebtedness and no engagement by the grantor to pay or do anything, the transaction was *prima facie* a sale with an option to repurchase.

Same—Burden of Proof.
    3. The burden of showing that the transaction referred to in paragraph 4, *infra*, was intended as a mortgage, was upon the grantor; and if guilty of laches, he could be barred from making the assertion.

    53 Mont.—31

Same—Laches.

4. *Held*, that a grantor of mining property under a deed absolute accompanied by an agreement conferring upon him the right to repurchase upon certain conditions, who stood idly by for more than thirteen years while his grantee treated the property as his own, spent money upon it, paid taxes and died, while his executors operated the property, improved it, and paid taxes, and while it passed through probate proceedings and was formally distributed, was barred by laches from asserting the claim that the transaction was intended for a mortgage and not a sale.

Same—Laches—What not Excuse.

5. In the absence of any step by the grantor above to assert his rights—such as to proclaim his position, demand an accounting, or protest against obnoxious expenditures—lack of funds "to go through with anything" he might "start," *held* not to excuse him for his delay.

*Appeal from District Court, Madison County; J. B. Poindexter, Judge.*

ACTION by Mary E. Elling and others against Benjamin J. Fine. From a judgment for plaintiffs and an order denying new trial, defendant appeals. Affirmed.

*Messrs. Walsh, Nolan & Scallon, Mr. S'. V. Stewart,* and *Mr. George R. Allen,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. William Scallon* argued the cause orally.

The defense of laches is not available to the plaintiffs under sections 5723 and 6454, Revised Codes, and the following decisions: *Grogan* v. *Valley Trading Co:,* 30 Mont. 229, 76 Pac. 211; *Hannah* v. *Vensel,* 19 Idaho, 796, 116 Pac. 115; *McPherson* v. *Hayward,* 81 Me. 329, 17 Atl. 164; Jones on Mortgages, sec. 330. Even apart from this statute, we submit that the doctrine of laches could not equitably be applied in this action. (*Becker* v. *McCrea,* 193 N. Y. 423, 23 L. R. A. (n. s.) 754, 86 N. E. 463; *McPherson* v. *Hayward, supra; Chase* v. *Chase,* 20 R. I. 202, 37 Atl. 804; *McKenney* v. *Page,* 146 Ky. 682, 143 S. W. 382; *Ross* v. *Leavitt,* 70 N. H. 602, 50 Atl. 110.) Plaintiffs are protected by the contract with respect to their expenditures. Expenditures are expressly provided for. No evidence has been lost on account of the delay.

*Messrs. Hartman & Hartman, Mr. M. M. Duncan* and *Mr. L. O. Evans,* for Respondents, submitted a brief; *Mr. Walter S. Hartman* argued the cause orally.

Appellant's rights under his counterclaim must be held to be barred by laches. The only excuse offered by him in his testimony (and he offers none in his pleading) for his protracted delay is his claim of financial inability to act sooner. He does not show in his pleading or testimony that he ever made any attempt to obtain financial assistance to prosecute his claim, and he does not explain in his pleading or testimony why he never sought an accounting or how he knew that it would be necessary to engage in litigation to have his alleged rights recognized. Even so, his financial inability to proceed is no excuse for his failure to promptly assert his rights. (16 Cyc. 169; *Hayward* v. *National Bank,* 96 U. S. 611, 24 L. Ed. 855; *Leggett* v. *Standard Oil Co.,* 149 U. S. 287, 37 L. Ed. 737, 13 Sup. Ct. Rep. 902; *Carter* v. *Mayor of Chattanooga* (Tenn. Ch. App.), 48 S. W. 117; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299.) That the appellant's laches will defeat his right to now assert his claim that the absolute deed and option contract was intended as a mortgage is well settled by all the authorities. (27 Cyc. 1031; *Schradski* v. *Albright,* 93 Mo. 42, 5 S. W. 807; *Buffum* v. *Porter,* 70 Mich. 623, 38 N. W. 600; *Turner* v. *Littlefield,* 46 Ill. App. 169; *Broaddus Heirs* v. *Potts,* 140 Ky. 583, 131 S. W. 510; *Luesenhop* v. *Einsfeld,* 93 App. Div. 68, 87 N. Y. Supp. 268; *Learned* v. *Foster,* 117 Mass. 365; *Ketchum* v. *Johnson's Exrs.,* 4 N. J. Eq. 370; *Mellish* v. *Robertson,* 25 Vt. 603; *Harter* v. *Twohig,* 158 U. S. 448, 39 L. Ed. 1049, 15 Sup. Ct. Rep. 883; *Baird* v. *Baird,* 48 Colo. 506, 111 Pac. 79; *Fitch* v. *Miller,* 200 Ill. 170, 65 N. E. 650; *Landrum* v. *Union Bank,* 63 Mo. 48; *Chapman* v. *Bank of California,* 97 Cal. 155, 31 Pac. 896; *Goree* v. *Clements,* 94 Ala. 337, 10 South. 906; *Downing* v. *Woodstock Iron Co.,* 93 Ala. 262, 9 South. 177; *Fountain* v. *Lewiston Nat. Bank,* 11 Idaho, 451, 83 Pac. 505; *Elliott* v. *Bunce,* 10 Cal. App. 741, 103

Pac. 897; *Harris* v. *Defenbaugh*, 82 Kan. 765, 109 Pac. 681; *Wilson* v. *Wilson*, 41 Or. 459, 69 Pac. 923; *Speidel* v. *Henrici*, 120 U. S. 387, 30 L. Ed. 718, 7 Sup. Ct. Rep. 610.) The rule as to the diligence required is particularly rigid when the property involved is of a fluctuating nature as mining property. (*Mantle* v. *Speculator Mining Co.*, 27 Mont. 473, 478, 71 Pac. 665; *Twin-Lick Oil Co.* v. *Marburg*, 91 U. S. 587, 23 L. Ed. 329; *Patterson* v. *Hewitt*, 195 U. S. 309, 49 L. Ed. 214, 25 Sup. Ct. Rep. 35.)

MR. JUSTICE SANNER delivered the opinion of the court.

In this case it is admitted by the pleadings, established by uncontradicted evidence, or found by the court: That the defendant, B. J. Fine (the appellant here), and one J. H. Pankey were, on January 28, 1895, indebted to Henry Elling in the sum of $93,494.62, all incurred in the purchase, maintenance and operation of certain mining properties situate in Madison county, among them ten unpatented claims and mill sites, referred to as the "Easton group," which are the subject of the present controversy. On that day Fine and Pankey executed, and a few days later delivered to Elling, an instrument, in form a deed absolute, conveying the properties so owned by them to him. At the same time and as part of the same transaction Elling (his wife joining) entered into a written agreement with Fine and Pankey, which agreement recited the execution of said deed and the desire of Fine and Pankey to have "the privilege of repurchasing" the Easton group, and provided that Elling would "resell and reconvey" the same to Fine and Pankey if they should on or before February 1, 1899, pay or cause to be paid to Elling "the sum of $93,494.62, together with interest thereon * * * at the rate of 10 per cent per annum, and the necessary, proper and legitimate expenses of operating, preserving and maintaining the title and right to the possession of said property, * * * with interest on such amounts at the same rate." Other stipulations of this agreement are these: That

Elling, if he worked the property, must do so "in miner-like fashion and in a manner conducive to the best interests of all the parties to the contract"; that any profits derived from such operations "shall be credited" on the sum fixed as the repurchase price (*viz.*, $93,494.62) ; that the costs of improvement and operation "shall be a charge against the property and shall bear. interest at the rate of 10 per cent per annum" that Elling "shall keep a just, true and accurate account" of his receipts from and expenditures on behalf of the property; that "either party to this contract may negotiate a sale" of the property, "but no sale can be made by either  *  *  *  without the consent of the other party in writing"; that if Elling "shall negotiate a sale *  *  *  he shall receive one-third  *  *  *  of the proceeds over and above the sum of $93,494.62, with interest,  *  *  * costs, and expenditures," but if Fine and Pankey should negotiate a sale, Elling "is to receive nothing" over and above said sum, with interest, costs and expenses; that Elling must maintain and defend the title and possession of said property against all persons and protect it from waste or destruction; and that Fine and Pankey, or either of them, shall have the right "at any time and at all reasonable times to enter upon the premises for the purposes of examination and inspection." Elling went into possession immediately, and from that time remained in the sole and exclusive possession of the property, working and developing it until his death in November, 1900. Thereafter the executors of his will continued to possess, operate and develop the property, until by decree of the district court of Madison county it was formally distributed to the plaintiffs as heirs at law and devisees of Henry Elling, since which time the plaintiffs have possessed, operated and developed the same. During the period elapsing since January 28, 1895, said Henry Elling, his executors, and these plaintiffs have paid all taxes levied against said property, have made large expenditures in mining, developing and improving the same, such expenditures over and above all receipts derived therefrom amounting in 1899

to $52,627.93, which, with the purchase price, made a total of
$146,122.55, and all this without accounting to anyone. Mean-
while, and on February 21, 1896, there was issued to Henry
Elling, and on March 23, 1896, by him recorded, a patent from
the United States granting the Easton group in fee simple to him.
The value of this property was always speculative and fluctuat-
ing in character, never demonstrably greater than $93,494.62.
With full knowledge of all that had been or was being done,
Fine and Pankey stood by demanding no accounting, question-
ing no act, offering no repayment, nor, save some verbal declara-
tions to strangers made by Fine shortly before the plaintiffs
brought this suit in February, 1913, had he or Pankey asserted
any claim to the property, and Pankey does not now assert any
such claim. Fine's contention, as set forth in his counterclaim,
is that the transaction whereby Elling became possessed of the
property in question was intended as security for the repayment
of the indebtedness then due from Fine and Pankey as above
mentioned, and that said transaction therefore amounts to a
mortgage, from which he ought now to be permitted to redeem
by paying such sum as may, after accounting by the plaintiffs,
be found to be still due. The trial court, though requested by
both sides to find upon this contention, failed to do so specifi-
cally, but held that Fine is barred by laches from making this
claim or asserting any right to or interest in the property, and
also that his "cause of action set up in his counterclaim herein
is barred by the provisions of the statute of limitations of this
state." As the result plaintiffs were adjudged to be the abso-
lute owners of the property and their title to the same was
quieted as against Fine. Hence these appeals.

We may premise at the outset that, if upon the face of the
[1] instruments the transaction, made up of the deed and con-
tract, clearly amounts to a mortgage, the judgment is wrong;
for, "once a mortgage always a mortgage," plaintiffs had no
title, and could get none by the failure of Fine to assert what
was obvious on an inspection of the record. But such is not,

[2] upon its face, the effect of the transaction.   The deed is absolute and conveys twenty-seven separate lodes and mill sites. The contract bears date two days later than the deed, and Elling's wife joined in its execution.   Of the twenty-seven lodes and mill sites it covers and agrees to reconvey only the ten comprised in the so-called Easton group.   It contains no reference to a loan, no mention of any indebtedness, no engagement by Fine and Pankey to pay or do anything; although some of its provisions, such as those mentioned above, are remarkable, they are not necessarily inconsistent with its expressed purpose to confer upon Fine and Pankey an option to repurchase property theretofore conveyed by them absolutely to Elling.   *Prima facie* the transaction was a sale to Elling with an option to Fine and Pankey to repurchase.   (*Gassert* v. *Bogk*, 7 Mont. 585, 1 L. R. A. [3]   240, 19 Pac. 281.)   To reach the conclusion that it was intended as a mortgage, resort to extrinsic evidence was necessary. This means that the burden was upon Fine (*Gassert* v. *Bogk*, *supra; Riley* v. *Blacker*, 51 Mont. 364, 152 Pac. 758), and that he could be barred by laches from making the contention (*Riley* v. *Blacker*, *supra; Harrington* v. *Butte & Superior Copper Co.*, 52 Mont. 263, 279, 157 Pac. 181; 27 Cyc. 231).

The trial court held that he was so barred, and we can see no [4]   reason for denying this conclusion.   The time within which it became the duty of Fine to challenge the apparent effect of the transaction commenced to run on February 1, 1899, when the option contract expired, and he became charged with the knowledge that Elling might thereafter treat the property as unaffected by any claim.   From that time until the heirs of Elling commenced this suit more than thirteen years elapsed, during which Fine stood idly by while Elling treated the property as his own, spent money upon it, paid the taxes, and died; while the executors of Elling's will operated the property, spent money for its improvement and paid the taxes upon it; while the property passed through probate proceedings and was by decree formally distributed to Elling's heirs, and while they, as

such heirs, have operated the property and paid the taxes on it ever since. *Riley* v. *Blacker, supra,* presented a similar situation, concerning which we said: ''Laches, considered as a bar independent of the statute of limitations, is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, 'Equity aids only the vigilant'; and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. Therefore has it often been held by this court that: While a mere delay short of the period of the statute of limitations does not of itself raise the presumption of laches (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315), yet 'good faith and reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Considerations of public policy and the difficulty of doing justice between the parties are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may be; and this is particularly so where the relations of the parties have been materially altered in the meantime.' (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Streicher* v. *Murray,* 36 Mont. 45, 92 Pac. 36; *Brundy* v. *Canby, supra.*) What constitutes a material change of condition has been the subject of much judicial discussion and some judicial dissension; but, whatever doubt there may be as to other circumstances, it never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such a change.'' To the same effect, see 16 Cyc. 163, 164, and cases cited.

The only explanation Fine offers for his delay is lack of funds; [5] he didn't want to start anything'' until satisfied of his ability ''to go through with it.'' However appropriate this stand may be, considered as business strategy, it has no virtue in the field of equity where Fabian tactics are always dangerous. Especially futile must it be to avoid the effect of inaction so prolonged as here, when there were things he could have done—such as to proclaim his position, to demand an accounting, to protest against expenditures he now seems to question—which required no outlay whatever.   Under the circumstances here shown, lack of funds is no excuse (16 Cyc. 159, and cases cited; *Leggett* v. *Standard Oil Co.,* 149 U. S. 287, 37 L. Ed. 737, 13 Sup. Ct. Rep. 902; *Hayward* v. *National Bank,* 96 U. S. 611, 24 L. Ed. 855; *Carter* v. *Mayor of Chattanooga* (Tenn. Ch. App.), 48 S. W. 117; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299), and the court was clearly right in applying the doctrine of laches (*Riley* v. *Blacker, supra; Maher* v. *Farwell,* 97 Ill. 56; *Schradski* v. *Albright,* 93 Mo. 42, 5 S. W. 807; *Turner* v. *Littlefield,* 46 Ill. App. 169; *Broaddus' Heirs* v. *Potts,* 140 Ky. 583, 131 S. W. 510; *Elliott* v. *Bunce,* 10 Cal. App. 741, 103 Pac. 897; *Goree* v. *Clements,* 94 Ala. 337, 10 South. 906; *Chapman* v. *Bank of California,* 97 Cal. 155, 31 Pac. 896; *Mellish* v. *Robertson,* 25 Vt. 603; *Harter* v. *Twohig,* 158 U. S. 448, 39 L. Ed. 1049, 15 Sup. Ct. Rep. 883; *Baird* v. *Baird,* 48 Colo. 506, 111 Pac. 79; *Fitch* v. *Miller,* 200 Ill. 170, 65 N. E. 650; *Landrum* v. *Union Bank,* 63 Mo. 48).

If, then, Fine was barred by his laches from raising the question of mortgage or no mortgage, the court below was justified in failing to specifically find upon the subject; indeed, such a finding would have been a pure gratuity.   We may remark, however, that if, as respondents insist with some reason, a fair inference from the language of the findings made is that the transaction was in fact what it appears to be, *viz.,* a deed absolute with an option to repurchase, we should not be inclined to disturb that conclusion, because we cannot say from a careful

reading of this record that the evidence clearly preponderates against it.

Appellant assails with much force the finding that Fine's cause of action as set forth in his counterclaim "is barred by the provisions of the statute of limitations of this state." This finding is rather vague, since it does not indicate what provisions of the statute of limitations are held to be a bar, and it may be that appellant's criticisms are sound; but if the appellant is barred by laches, and that conclusion is sufficient, as it clearly is, to sustain the judgment, the question of limitations becomes of no importance.

The other matters assigned as error could not command a reversal, and therefore will not be further considered.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

