LEWIS, Appellant, *v.* BOWMAN et al., Respondents.

(No. 8,237.)

(Submitted November 26, 1941. Decided January 24, 1942.)

[121 Pac. (2d) 162.]

*Messrs. Speer & Hoffman* and *Mr. G. G. Harris,* for Appellants, submitted a brief; *Mr. Harris* argued the cause orally.

*Mr. D. W. Doyle,* for Respondents, submitted a brief, and argued the cause orally.

HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of Mr. Justice Morris, disqualified, delivered the opinion of the court.

This action was brought by the plaintiff, F. F. Lewis, against the defendants, Eva Bowman, Loraine Storm, and Eva Bowman as administratrix of the estate of Leah H. Lewis, deceased, to obtain a decree adjudging him to be the equitable owner of Lots 1, 2 and 3 in Block 9 of the Original Townsite of Brady, Pondera County, Montana, and that they, the defendants, are trustees of the legal title thereto for his use and benefit. The defendant, Loraine Storm, defaulted. Following the trial of the cause as between the plaintiff and the defendants, Eva Bowman and Eva Bowman, as administratrix of the estate of Leah H. Lewis, deceased, judgment was rendered and entered in favor of said defendants. From the judgment the plaintiff has prosecuted an appeal to this court.

It appears from the record that F. F. Lewis and Leah H.

Lewis were married in St. Paul, Minnesota, on the 30th day of January, 1908. . At the time he was a resident of Minnesota and she was a resident of Iowa. They lived together in Minnesota until October, 1910, when Mr. Lewis moved to the town of Brady, Montana. In December, 1910, he was joined by Mrs. Lewis who had been on a visit to her parents in Iowa. For a period of a year or more they occupied an apartment over what was known as Weldon's store, but being desirous of acquiring a home of their own Mr. Lewis in the spring of 1911 negotiated with the owners of Lot 2 with the view of purchasing the same. A price of one hundred dollars was agreed on. The sale was consummated on the 16th day of October, 1911, when Thomas O. Larson and Alexander Truchot, the owners, together with their wives executed a deed to the lot, title thereto being taken in the name of Leah H. Lewis at the instance of her husband. The grantors accepted the promissory note of F. F. Lewis for one hundred dollars in payment of the purchase price. The deed was delivered to him and on the 2nd day of January, 1913, he filed the same for record in the office of the county clerk of Teton County, Montana. The Townsite of Brady was then situate in Teton County. Since 1919, when Pondera County was created, its situs has been in the latter.

In the fall of 1911 construction of a dwelling house on Lot 2 was begun. By the spring of 1913 the work had progressed sufficiently to permit Mr. and Mrs. Lewis to occupy the building. From then to the 16th or 17th of September, 1937, they lived in it as husband and wife.

In July, 1913, they discussed the desirability of possessing Lot 1 which adjoined Lot 2 on the east, and Lot 3 which adjoined it on the west. Accordingly, on or about the 7th day of August, 1913, these lots were purchased. The deed was signed by Thomas O. Larson, Dena H. Larson, Alex Truchot and Mary E. Truchot, as grantors, and at the direction of her husband, Leah H. Lewis was named therein as grantee. The consideration was paid by F. F. Lewis, delivery of the deed was made to him and on August 16, 1913, he filed it for record in the

office of the county clerk of Teton County. The property involved was assessed to the plaintiff until 1919 and thereafter to Leah H. Lewis. The taxes levied against it up to and including 1934 were paid by him. He also paid the first installment of the 1935 taxes and the first installment of the 1936 taxes. During all this time Mrs. Lewis had no income of her own and any money she ever received came from her husband.

On the 19th day of March, 1935, the plaintiff assuming to act as the agent of his wife, furnished the county assessor of Pondera County with a statement in which were listed for assessment Lots 1, 2 and 3 together with some personal property. He signed her name to the affidavit affixed to the statement. The affidavit was in the form prescribed by section 2004, Revised Codes of Montana 1921, that is to say it averred, among other things, that affiant at twelve o'clock m. on the first Monday in March last owned, claimed, possessed or controlled the listed property.

As has been stated, F. F. Lewis and Leah H. Lewis intermarried on the 30th day of January, 1908. Two children were born to them, Eva, now Mrs. Bowman, on July 26, 1909, and Loraine, now Mrs. Storm, some time in the year 1915. After a time, unfortunately, domestic infelicity made its appearance and so in the early part of September, 1937, while Mr. Lewis was away in the east on business, his wife instituted a suit for divorce against him. He returned to his home in Brady on or about the 16th day of September, and on learning of the proceeding the next morning he left his home never to return. The case was contested and a trial was had on the 28th day of February and the 1st and 2nd days of March, 1938, which later resulted in a decree divorcing the couple. Mrs. Lewis died on or about the 8th day of August, 1939, and thereafter Mrs. Bowman was appointed administratrix of her estate by the District Court of Pondera County. The complaint in this suit was filed on the 3rd day of November, 1939.

Mr. Lewis, who took the stand in his own behalf, testified, among other things, that immediately following his arrival in Brady he engaged in the grain business. In or about the month of April, 1911, he and his wife discussed the advisability of buying a lot and erecting a house thereon. As he did not have enough money to meet the entire cost of the building she suggested that he borrow one thousand dollars from her folk. He then told her that when the lot was purchased he would place the title in her name as security for the loan when made, and that upon its being paid she should deed the property to him. She assented to the proposed arrangement. On the 28th day of June of the same year, in response to the request of Mrs. Lewis, he received a draft from her father for the sum of one thousand dollars. He thereupon executed a note for a similar amount and forwarded it to his father-in-law. The purchase of Lot 2 followed. Before the end of 1917 the note with interest was fully paid and Mrs. Lewis was so informed. The purchase of Lots 1 and 3 was made under conditions similar to those which surrounded the purchase of Lot 1. He never actually handed the deeds to Mrs. Lewis but kept them in his safe which was cracked in the summer of 1930 and its contents rifled, and he never intended to vest the ownership of the property in her. He carried the insurance on the house and paid the premiums. Subsequent to 1913 a garage, an ice house, a chicken house, a barn and a children's play house were placed on the ground. The cost of all improvements was met by him. In 1930 or 1931 he asked his wife to deed the property to him in accordance with their agreement, at the same time stating that he was about to borrow a lot of money and had listed the house as one of his assets. At first she made no reply, she just walked off, but later she remarked to him "why you have all the rest of the property in your name, why should you have the house." This he took to be a refusal on her part to convey. Not until then did he indicate a desire to have the lots in question deeded to him. She never complied with the request. When he had finished paying his

father-in-law in 1917 he did not ask his wife for a deed; he never thought of the matter at the time. From 1935 on to 1937 he owed more than one hundred thousand dollars. At the time the divorce action was begun the improvements on the lots had a value of about seven thousand dollars. Some time in 1939, after Mrs. Bowman qualified as administratrix, the property was sold for the sum of $1,850. In a suit for conversion which was tried in March, 1939, Mrs. Lewis testified that Mr. Lewis came home in the summer of 1936 and said to her that the property stood in her name and therefore was her property, and also that he then gave her everything he had, including the furniture in the house. That was the first time she claimed ownership of the property in his presence.

Mrs. Loraine Storm testified in behalf of the plaintiff and stated among other things that she was present in the home some time in the year 1930 or 1931 when a conversation occurred between her father and mother regarding property. He said he wanted her to deed the house to him and she replied as all of the rest of the property was in his name she did not see why she should not keep the house in hers. Shortly after her mother stated to her that the house stood in her name and that she proposed to keep it that way; that she would make her father fight for it before she would deed it back to him. In or about 1930 her father told her mother he intended to build a basement under the house. She did not see the necessity of going to the expense even after it was pointed out to her that the house was settling with consequent damage to the floors and plastering. He caused the work to be done anyway. In the conversion action which was tried in March, 1939, and in which her mother was plaintiff and she and her father and others were defendants, her mother testified that her father gave her the house and contents in 1936. She was a witness for her father in the divorce suit and she did not attend her mother's funeral.

Eva Bowman was called as a witness for the defendants. She testified, among other things, that some time in 1930 or

1931, when her father and mother and Loraine and she were together in the house, her father said to her mother that he was in financial difficulty and wanted her to deed the house to him. She refused and added it was the only thing she had left to hang on to.

Certain testimony which the plaintiff gave in the trial of the divorce case was offered in evidence by the defendants for the purpose of impeachment. It was to the effect that when he proposed putting the deed to the lot in the name of his wife she said nothing.

We have read the testimony over and over and believe the foregoing statement epitomizes the material matters and things which it contains.

Counsel for plaintiff have devoted considerable space in their brief to an effort to establish his competency to testify to direct transactions and oral communications between him and the deceased Mrs. Lewis affecting the property in controversy. It was not necessary. Counsel for defendants did not question his competency at any time while on the stand. It is elementary that unless seasonable and appropriate objection is made in such a situation the point is deemed waived. (*Wilson* v. *Wilson,* 64 Mont. 533, 210 Pac. 896; 70 C. J. 370, 371; 2 Hyatt on Trials, sec. 1932, p. 1896.)

It is specified in the brief of plaintiff that the trial court erred in finding that he did not purchase Lot 2 until October, 1911; in finding that the home was completed in 1912, and in not finding that prior to 1935 the property was assessed to him. Prior to October, 1911, there was at best only an oral agreement to purchase Lot 2. The purchase actually took place when the property was transferred by the deed which was executed on October 16, 1911. (*Franzke* v. *Fergus County,* 76 Mont. 150, 245 Pac. 962; *Callender* v. *Crossfield Oil Syndicate,* 84 Mont. 263, 275 Pac 273; 66 C. J. 479, 480.) The finding of the court was correct in that respect. It is true the home was not completed in 1912, but what of it? It is of no im-

portance so far as the merits of the case are concerned whether it was completed in 1912 or 1913 or even later. Indeed, it is difficult to determine from the record when the finishing touches were put on the home. The plaintiff testified that the property was assessed to him up to 1919 and thereafter to Mrs. Lewis. The assessment rolls were not introduced in evidence. The court found, accordingly, that from 1919 on the property was assessed to Mrs. Lewis. There is nothing in the record which would justify a finding that prior to 1935 the property was assessed to Mr. Lewis.

It is further specified in said brief that the court erred in finding that Lot 2 was purchased before the loan was made to plaintiff by his father-in-law and before any expenditures were made thereon by him; in finding that the evidence was not sufficient to establish a resulting trust; in finding that the evidence was insufficient to overcome the presumption of a gift; in finding that the plaintiff caused the title to the property to be conveyed to Leah H. Lewis as a gift; in finding that the property belonged to Leah H. Lewis in her lifetime and that at the time the action was commenced it belonged to her estate; in finding that the plaintiff had no right, title or interest in the property; in failing to find that Leah H. Lewis held the property in trust for the plaintiff, and in failing to find that a constructive trust arose in favor of the plaintiff and that as a consequence he is the owner of the property and entitled to a conveyance thereof.

It is apparent that all of these specifications, with the exception of the first in point of place, deal in one form or another with the question of ownership of the property. A trust is either voluntary or involuntary. (Sec. 7878, Rev. Codes.) An involuntary trust is one which is created by operation of law. (Sec. 7880, Id.) Involuntary trusts are either resulting or constructive trusts. (*Meagher* v. *Harrington*, 78 Mont, 457, 254 Pac. 432; 65 C. J. 221-225; 1 Bogert on Trusts & Trustees, sec. 1, p. 7.) When a transfer of real property is made to one person, and the consideration thereof is paid by another,

a trust is presumed to result in favor of the person by whom such payment is made. (Sec. 6785, Id.) The trust so presumed is called a resulting trust. (*Meagher* v. *Harrington,* supra.) Applying these principles and those laid down by other authorities to the allegations of the complaint it can be said they charge in effect that "a resulting trust by way of a mortgage" or a resulting trust and a mortgage combined came into being, both as a benefit to and an obligation of the plaintiff, with respect to Lots 1, 2 and 3 because of transactions between him and his wife and his wife's parents in or about the year 1912. (2 Bogert on Trusts & Trustees, sec. 455, pp. 1366-1368; *McKenzie* v. *Evans,* 96 Mont. 1, 29 Pac. (2d) 657; *Crozier* v. *Soquel,* 101 Cal. App. 402, 281 Pac. 698; *Webb* v. *Vercoe,* 201 Cal. 754, 258 Pac. 1099, 54 A. L. R. 1200; *Dobbs* v. *Dobbs,* 150 Va. 386, 143 S. E. 702; *Otts* v. *Avery,* 234 Ala, 122, 173 So. 744.)

Ordinarily, of course, where a conveyance is made to one person, and the consideration is paid by another, a trust is presumed in favor of the latter. (Sec. 6785, supra.) But this presumption is not indulged where, as here, the conveyance is made by the husband to the wife. In such case the presumption, disputable in character, is that the transfer was intended as a gift. (65 C. J. 403; 2 Bogert on Trusts & Trustees, sec. 459, p. 1391; *Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546; *McQuay* v. *McQuay,* 81 Mont. 311, 263 Pac. 683; *McLaughlin* v. *Corcoran,* 104 Mont. 590, 69 Pac (2d) 597; *Holohan* v. *McCarthy,* 130 Or. 577, 281 Pac. 178.)

The evidence to establish a trust must be clear, convincing and satisfactory and practically free from doubt (2 Bogert on Trusts & Trustees, sec. 464, p. 1422; *McQuay* v. *McQuay,* supra; *G. R. Holcomb Estate Co.* v. *Burke,* 4 Cal. (2d) 289, 48 Pac. (2d) 669; *Bowmaster* v. *Carroll,* 8 Cir., 23 Fed. (2d) 825), and whether the evidence is of this character must be determined by the trial court. (*Taylor* v. *Bunnell,* 211 Cal. 601, 296 Pac. 288.) This principle is especially applicable where the plaintiff must establish his case largely by his own testimony as to oral conversations between himself and his former wife

who can no longer speak for herself. (*Clary* v. *Fleming,* supra; *Marcellus* v. *Wright,* 65 Mont. 580, 212 Pac. 299.) Where the legal title rests in one person, in order to establish a resulting trust for the benefit of another against the presumption in favor of the legal title, the evidence must be clear and convincing, especially when an attempt is made to establish a resulting trust after the lapse of many years, or where parol evidence alone is relied upon. (13 Ency. of Evidence 150, 151; *G. R. Holcomb Estate Co.* v. *Burke,* supra.) It is well settled, also, that the presumption of a gift can only be overcome by clear and convincing evidence. (13 Ency. of Evidence 151; *Holohan* v. *McCarthy,* supra; *Dahl* v. *Simonsen,* 157 Or. 238, 70 Pac. (2d) 49.) It may be proper to add here that the burden is on him who alleges that a deed absolute on its face is a mortgage, to establish the fact by clear and convincing evidence. (41 C. J. 356-360; *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76; *Johnson* v. *Opheim,* 67 Mont. 126, 214 Pac. 951.)

The court found against the contention of plaintiff that a ▉ resulting trust or a constructive trust as declared by section 7887, Revised Codes, was created in his favor with respect to the property involved. It thereby held that plaintiff did not sustain the burden which the law imposed on him. In an equity case the findings of the trial court will not be disturbed on appeal unless the evidence clearly preponderates against them, and when the evidence, fully considered, furnishes a substantial basis for the findings they will be allowed to stand. (*Fitschen Bros. Commercial Co.* v. *Noyes' Estate,* 76 Mont. 175, 246 Pac. 773; *McQuay* v. *McQuay,* supra; *McLaughlin* v. *Corcoran,* supra.) Moreover, this court cannot lose sight of the fact that the trial judge had the decided advantage of seeing the witnesses and hearing their testimony and observing their ▉ conduct and demeanor upon the stand. (*McQuay* v. *McQuay,* supra.) The lower court gave consideration to the fact, as the findings disclose, that from the time the second deed was executed until 1930 or 1931, when the plaintiff desired to bolster his assets, the matter of ownership of the property was never

discussed between him and his wife, and that in the early part of 1935 he, in her behalf, furnished a sworn statement to the assessor of Pondera County in which she claimed ownership of the property. The statement was an admission by conduct on the part of plaintiff and is not without significance. It is elementary that the acts and conduct of a party, when inconsistent with his present claims, may be shown against him. (1 Ency. of Evidence 362-365; 22 C. J. 317; *Proctor* v. *Appleby,* 110 Wash. 403, 188 Pac. 481.) The opinion of the court in the case of *Carey* v. *Guest,* 78 Mont. 415, 258 Pac. 236, shows the importance of the admission so made. The statement also tends to contradict the testimony of the plaintiff to the effect that not until March, 1939, did Mrs. Lewis claim ownership of the property in his presence. This court is committed to the principle that a disputable presumption is not overcome by positive testimony of an interested witness to the contrary, and in such circumstances a question of fact is raised which must be decided by the court. (*McLaughlin* v. *Corcoran,* supra.) Furthermore, the delay of plaintiff in not seeking relief until after the death of Mrs. Lewis was a circumstance which the trial court was entitled to consider in weighing the oral testimony relating to a transaction which, according to him, was consummated many years ago. (*Wyoming-Montana Dev. Co.* v. *Wells Fargo Bank & Union Trust Co.,* 15 Cal. App. (2d) 133, 59 Pac. (2d) 185.) With the exception of the finding which deals with the time the loan was made and expenditures upon Lot 2 begun, we cannot say, in view of all the circumstances, that the evidence preponderates against the findings of which complaint is made. Indeed, there is much in the record to appeal to the conscience of the court in behalf of the appearing defendants and to justify the findings made by it.

The finding of the court that the transfer of October 16, 1911, and the transfer of August 7, 1913, were gifts negatives the claim that the deeds were given to secure the payment of the thousand-dollar loan. The deeds could not have the force and effect of gifts and at the same time be intended as mort-

gages. (See 41 C. J. 315.) In other words, the plaintiff could not make a gift of the property to his wife and thereafter continue to be the equitable owner of it. (*Logan* v. *Ryan*, 68 Cal. App. 448, 229 Pac. 993.) Hence the finding that the loan was made after, rather than before, the purchase of Lot 2 is immaterial. (64 C. J. 1278, 1279; 8 Standard Proc. 1045-1047; *Elling* v. *Fine*, 53 Mont. 481, 164 Pac. 891, Ann. Cas. 1918C, 752; *Bank of Tehama Co.* v. *Crumley*, 74 Cal. 461, 16 Pac. 207; *Phillips* v. *Stark*, 65 Cal. App. 136, 223 Pac. 443; *Jones* v. *Wilton*, 42 Cal. App. (2d) 45, 108 Pac. (2d) 25.) Furthermore, a close reading of the testimony of plaintiff himself would justify the conclusion that no money was expended in improving the lot until the legal title passed to Leah H. Lewis. But, be that as it may, the finding in this respect is also immaterial.

Finally, it is charged in plaintiff's brief that the court erred ██ ██ in finding that the defendants were prejudiced by the delay in bringing the action, and in finding that the action is barred by laches. As has been already pointed out, in 1930 or 1931 the plaintiff requested his wife to convey the property to him. The request was met by a refusal. She died on the 8th day of August, 1939. The action was begun on the 3rd day of November, 1939. The bar of the provisions of any appropriate section of our statute of limitations or the defense of laches was not pleaded. However, in a proper case, the court of its own motion may invoke the doctrine of laches when not interposed as a defense at all. A court of equity may refuse to entertain a suit brought after an unreasonable delay, regardless of whether there has been a plea of the statute of limitations or of laches. It is the province of such a court to deny relief, *sua sponte,* whenever it appears that the demand is stale and that, as a result of the delay in prosecuting the claim, there has been such a change in the relations of the parties as to prejudice the rights of the defendant in making his defense. (1 Bancroft's Code Pleading, sec. 318, p. 476; *Crosby* v. *Robbins*, 56 Mont. 179, 182 Pac. 122; *Southern Counties Gas Co.* v. *Eden*, 118 Cal. App, 582, 5 Pac. (2d) 654.) The death of one of the parties to the

transaction is such a change. (*Riley* v. *Blacker*, 51 Mont. 364, 152 Pac. 758; *Elling* v. *Fine*, supra; *Clary* v. *Fleming*, supra; *Parr* v. *Reyman*, 215 Cal. 616, 12 Pac. (2d) 440; *Russell* v. *Fish*, 149 Wis. 122, 135 N. W. 531.) The cases cited in the brief of plaintiff in opposition to the finding of laches are not in point for the reason that as early as 1930 or 1931 his wife manifested hostility to his claim to the property. He was thereby put on notice as to her position regarding it. (2 Bogert on Trusts & Trustees, sec. 466, p. 1430; 4 Bogert on Trusts & Trustees, sec. 952, p. 2764; *First State Bank* v. *Mussigbrod*, 83 Mont. 68, 271 Pac. 695; *State ex rel. Central Auxiliary Corp.* v. *Rorabeck*, 111 Mont. 320, 108 Pac. (2d) 601.) The conclusion of the court that plaintiff is barred from relief herein because of his laches is fully sustained by the evidence. (*Riley* v. *Blacker*, supra; *Elling* v. *Fine*, supra; *Clary* v. *Fleming*, supra; *G. R. Holcomb Estate Co.* v. *Burke*, supra.)

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ANDERSON concur.