ALICE M. SCOTT v. MARSHALL W. BEECHER ET AL.

*Landlord and tenant—Holding over—Surrender of premises—Evidence.*

1. Where a tenant holds over after the expiration of his year, and the landlord elects to treat him as a tenant, rather than as a trespasser, by demanding rent, the ·tenant cannot thereafter, in the course of the payment of his rent, create a different tenancy by accompanying such payment with conditions.

·2. Where in such a case the tenant leaves the premises, and sends the key by a clerk to the landlord, who declines to receive it, and, on the failure of the clerk to force it upon him, the clerk hands it to one of the bell boys at the hotel where the landlord is boarding, and it comes into the landlord's possession, such acts will not constitute a surrender and acceptance of the premises.

3. The after-efforts of the landlord to rent the premises, which were finally successful, will not operate to relieve the tenant from the payment of rent for the portion of the year during which they remained vacant.

Error to Wayne. (Hosmer, J.) Argued April 6, 1892. Decided May 13, 1892.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Keena & Lightner,* for appellants, contended:

1. The tenancy, being under a verbal lease for one year from May 1, 1889, terminated May 1, 1890, and no notice prior thereto was required from the tenant; citing 2 Taylor, Land. & Ten. § 465; Woodfall, Land. & Ten. 221.

·2. The presumption of a tenancy from year to year, which the law creates against a tenant holding over beyond his term, is one of law, and can be rebutted by evidence showing a contrary intent or understanding; citing 12 Amer. & Eng. Enc. Law, 676, 678; *Smith v. Allt,* 7 Daly, 492; *Hoffman v. McCollum,* 93 Ind. 326.

3. Whatever may be the actual intention of a party to a transaction,

if he so conducts in regard thereto as to lead a reasonable person to believe that he understands and assents to its terms, and the other party, so believing, fully performs on his part in conformity with the view so indicated, the former is precluded from asserting that he did not so understand and assent, and is bound; citing *Peake v. Thomas*, 39 Mich. 589; and see *Truesdail v Ward*, 24 Mich. 134; *Manley v. Saunders*, 27 Id. 348; *Mizner v. Kussell*, 29 Id. 230; *Peters v. Canfield*, 74 Id. 498, 520; *Cadwell v. Pray*, 86 Id. 270.

4. Plaintiff's taking possession of the store after the defendants had left it, and placing a placard in the window, "For Rent," and subsequently renting the premises, was evidence of a surrender and acceptance to be submitted to the jury; citing *Day v. Watson*, 8 Mich. 536; *Hill v. Robinson*, 23 Id. 25; *Jacobson v. Miller*, 41 Id. 100; *Rice v. Dudley*, 65 Ala. 68.

*W. E. Baubie*, for plaintiff.

McGRATH, J. This is an action for rent. Defendants leased the premises for one year from May 1, 1889. The rent was payable monthly in advance. On the 1st day of April, 1890, according to the testimony of defendants, plaintiff came to collect the rent, at which time defendants said to her "that the store, under its present conditions, was not suitable for our business; that we were looking for another store, and, if we succeeded in finding one, we should move, and we did not intend to stay in that store another year." It was not claimed that plaintiff made any reply. On the 1st of May, 1890, defendants were still in possession, and had made no preparations to move or done anything indicating an intention to vacate the premises. Plaintiff says:

"The 1st day of May I went to the store. He wrote out and handed me a check for the rent, payable a month in advance, and then took his receipt book, wrote out a receipt, and I signed it; and after I got the check, put it in my pocket, and had signed that receipt, he says to me, 'I don't think we'll want this store for over a month or two longer.' 'Well,' I says, 'I shall hold you for another year.'"

One of the defendants testifies:

"I told Mr. Scott— I took the check book out and wrote out a check, laid the check on my desk, took that book, and wrote out the receipt, and, when I was in the act of writing that receipt, on May 1, I informed Mr. Scott that I would not take the store for another year. I might stay one month, two months, three months, or possibly the year, but I would not make any agreement for a year. He put the check in his pocket,—folded it up, put it in his pocket. He says, ' This binds the bargain for another year.' "

On May 31, 1890, defendants gave written notice that they would vacate the store on June 30, 1890, and did vacate the premises on that day. Plaintiff advertised the store to rent, and rented it November 1, 1890, and brings this suit to recover the rent for July, August, September, and October.

The court directed a verdict for plaintiff, and defendants appeal.

We think that there was no error in the court's direction. It is well settled that when a tenant enters under a parol lease for a year, and holds over, and when a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser, or as a tenant holding upon the terms of the original lease. *Conway v. Starkweather,* 1 Denio, 113; *Schuyler v. Smith,* 51 N. Y. 309; *Smith v. Littlefield,* Id. 539; *Prickett v. Ritter,* 16 Ill. 96; *McKinney v. Peck,* 28 Id. 174; *Secor v. Pestana,* 37 Id. 525; *Railroad Co. v. Ferry Co.,* 82 Id. 230; *Clapp v. Noble,* 84 Id. 62; *Wire Cloth Co. v. Gardner,* 99 Id. 151; *Smith v. Bell,* 44 Minn. 524 (47 N. W. Rep. 263). But if the tenant hold over by express consent of the landlord, or under circumstances from which such consent may be implied,—as for a considerable length of time without objection,—he is then entitled to notice to quit. *Benfey v. Congdon,* 40 Mich. 283; *Anderson v. Prindle,*

23 Wend. 616; *People v. Paulding*, 22 Hun, 91; *Usher v. Moss*, 50 Miss. 208; *Meno v. Hoeffel*, 46 Wis. 282 (1 N. W. Rep. 31).

No notice was necessary to terminate the tenancy which had existed prior to May, 1890, on the part of either landlord or tenant. The law presumes an intention by the tenant to continue the yearly tenancy from the holding over. An agreement that such holding over should not be so regarded might be shown to rebut the presumption, or there might be such clear indications of an intention to vacate that a holding over for a day would not support the presumption. But, in the absence of such agreement or such indications, the holding over is the legal expression of the tenant's intention, and all that is necessary to complete the contract is the consent or acquiescence of the landlord. An occupancy for any given length of time is not necessary to constitute a holding over. Time is only necessary, in the absence of other evidence, to establish the consent or acquiescence of the landlord. No claim is made here that plaintiff had, at any time prior to May 1, 1890, consented to the creation of a tenancy different in terms, or to an occupancy after April 30, 1890, for any purpose other than the continuance of a yearly tenancy. In the recent case of *Smith v. Bell, supra,* it was held that a mere notice by the tenant, before the time expires, that he does not wish the premises for another year, will not change the effect of his holding over.

In *Benfey v. Congdon, supra,* the tenant insisted that his landlord had consented to the continuance of his occupancy, but the landlord denied any such consent. In *Teft v. Hinchman,* 76 Mich. 672, the tenant made the same claim, and the Court say:

"The complainants could have proceeded against him

the next day, without notice to quit, to obtain possession. He could gain no further right of occupation of the building, except by agreement or by acquiescence in his holding over for so long a time as to indicate a permission to hold another year, or to render him a tenant at will."

In both of those cases the tenants undertook to force a new term upon the landlord. Here the tenants undertake to force a different tenancy. In those cases it was held that a holding over against the protests of the landlord did not continue the tenancy. Here the landlord insists that he consented to and acquiesced in the continuance of the yearly tenancy. What the tenants in those cases sought to establish in order to continue the yearly tenancy is here set up, viz., the consent of the landlord. In the present case the demand for the rent was a clear recognition of the tenancy, and established the landlord's acquiescence. It was the legal expression of the landlord's election. Hence the simple question presented here is whether a tenant may hold over, and then, after the landlord has elected to treat him as tenant rather than trespasser, he may, in the course of the payment of his rent, create a different tenancy by accompanying such payment with conditions. We are clear that he cannot. The payment of the rent was but an incident of an existing tenancy; a tenancy which the law had already created; a tenancy predicated upon the conduct of the parties, without reference to the mental reservations of either.

The next contention is that there was a surrender of the premises on June 30, 1890, by the defendants, and an acceptance at that time by plaintiff. The only testimony offered to support this claim was that relating to the surrender of the key, and the subsequent placing of a "To Rent" card in the window by plaintiff. Plaintiff

rented the premises from November 1, 1890, and makes no claim for rent after that period. Defendants abandoned the premises on June 30, 1890, and sent the key by a clerk to plaintiff at her hotel. She declined to receive it, and it fell upon the floor when the clerk undertook to force it upon plaintiff. The clerk picked up the key, and subsequently handed it to one of the bell boys, and presumably the key came into the possession of plaintiff. This conduct does not tend to show any intention to accept the key or the premises. Defendants had, up to this time, dealt with plaintiff's husband, who was her agent. The very method adopted by defendants shows clearly that they knew that the plaintiff did not intend to release them, and the result of the experiment very clearly shows a determination to hold them for the rent. Plaintiff certainly had sufficient interest in the premises to protect them when abandoned, and to take possession of the key left, as this key was, in the hands of a bell boy.

Nor do we think that the efforts made by plaintiff to reduce her claim against defendants by renting the premises operated to release the defendants. There was no dispute as to the facts; no room for any understanding that plaintiff intended to dispossess or release defendants; nothing for the jury. Defendants had abandoned the premises, and stood upon the ground that there was a monthly, and not a yearly, tenancy. In *Jacobson v. Miller*, 41 Mich. 90, 100, the claim was made that the key had been received, and that the landlord had offered the premises for rent, and the Court say:

"The facts relied upon to establish a surrender are not conclusive in their nature, but are liable to be qualified by other facts, which might limit their significance or take it away entirely."

It is the policy of the law to encourage parties having

a right of action, by reason of a breach of contract, in their efforts to reduce their damages to the minimum; indeed, in certain cases, it imposes a duty in that direction; and in cases like the present there is no reason why such efforts should be construed against the party making them.

The judgment is affirmed, with costs.

GRANT and MONTGOMERY, JJ., concurred. MORSE, C. J., concurred in the result. LONG, J., did not sit.