MAHONEY, Respondent, *v.* LESTER et al., Appellants.
No. 8611
Submitted Feb. 26, 1946. Decided April 16, 1946.
168 Pac. (2d) 339

552

Mr. E. F. Bunker, of Bozeman, and Mr. Albert Anderson, of Helena, .for appellants.

Mr. Frank M. Gray, of Bozeman, for respondent.

Mr. Howard M. Lewis, of Bozeman, amicus curiae.

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from a judgment. The action is one of unlawful detainer involving the possession of the dwelling

house and premises situate at No. 407 West Main Street, in the City of Bozeman, Montana. A jury was waived and the cause tried to the court. The court made and filed written findings of fact and conclusions of law and in accordance therewith judgment was given and entered for plaintiff, P. H. Mahoney, and the defendants, Charles W. Lester and Mable Lester, husband and wife, have appealed.

The trial court's findings of fact recite: That on and prior to June 1, 1943, the plaintiff P. H. Mahoney was the equitable owner and entitled to the possession of the above described dwelling and real property and then was in the constructive possession of said property; that one J. A. Stafford was placed in charge of the property as the agent of plaintiff for the purpose of looking after the property and finding a tenant therefor and that he acted as such agent until his death which occurred prior to the trial; that in May, 1943, the defendants commenced negotiations with Stafford for a lease upon and for an option to purchase the property; that in that connection Stafford sent to his principal Mahoney, who was then at Glendale, California, a telegram reading: "Have party to live in house. They have beauty parlor outfit to operate in front part. Will pay twenty five dollars per month for complete property and sign years lease with option of buying if you will allow one month rent conditioning place. Advise immediately. Prepay."; that three days later the principal Mahoney sent to his agent Stafford a telegram reading: "Price OK Years Lease OK Ten months to buy OK Five thousand-five hundred down. Letter following. Make lease from P. Mahoney."; that thereafter further negotiations were had between the agent Stafford and defendants but no agreement was reached; that during such negotiations Stafford delivered to defendants the keys to the house whereupon defendants moved in, continuing to occupy same from June 1, 1943, to the date of the findings (March 30, 1945); that the plaintiff Mahoney sent a proposed written lease to his agent Stafford for execution by defendants but that defendants refused to

sign the same; that thereafter the defendants caused their attorney to draft and forward to plaintiff in California for his signature a proposed lease and option to purchase, which instrument the plaintiff declined to sign; that the proposed lease and option so submitted by defendants provided for a lease of the property for a period of one year, at a rental of $25 per month, with an option to buy the property for the sum of $4,500, the rentals paid prior to the time of exercising the option to be applied as part of the purchase price; that the parties never came to any agreement either as to the duration of the lease or for the purchase of the property by defendants; that with the consent of plaintiff and through his agent, Stafford, defendants were allowed to apply one month's rent for the property in the sum of $25 towards repairing the dwelling; that other than such $25 allowance, defendants have never paid the plaintiff any rent upon the property during their entire occupancy covering the period from June 1, 1943 to March 30, 1945; that payment of such rent had been demanded of defendants on several occasions; that without the knowledge or authority of plaintiff, defendants had paid a fine of $50 imposed against the property by certain labor unions and had spent the sum of $28.15 for repairs which they desired made on the property; that on August 3, 1944, plaintiff's attorney prepared and signed a notice in writing directed to the defendants demanding payment in full of the past due rent from June 1, 1943 in the sum of $350, being at the rate of $25 per month from June 1, 1943, to August 31, 1944, and also giving notice to defendants to either pay the rent demanded or to quit the premises and that, upon their failure to comply, action would be started against them for the full amount of unpaid rent, and for treble the amount as damages; that such notice in writing was duly served upon the defendant Mabel Lester, at said residence herein described, by the undersheriff of Gallatin County by delivering to and leaving with said defendant a true copy of said notice; that defendants refused to pay the said rent or to surrender possession of the property

of the plaintiff and that thereupon this action was instituted to recover the possession of the property; that after allowing $25 for the first month's rent on the property there is due and owing to plaintiff on March 1, 1945, as rental of the property the sum of $500.

From the foregoing findings of fact the trial court concluded as a matter of law:

"I. That in view of Section 7744, Revised Codes of Montana 1935, the tenancy by which the defendants held the property described in the complaint was a tenancy from month to month.

"II. That the action herein is predicated upon Subdivision 2 of Section 9889, Revised Codes of Montana 1935, and that this section authorized the action of unlawful detainer in any case where a tenant continues in possession of real property without permission of the landlord after default in the payment of rent pursuant to the lease agreement under which the property is held, and three days notice in writing requiring its payment or possession of the property shall have been served upon him. The basis of the action is the default in the payment of rent after the same becomes due, and the withholding of possession by the tenant after three day's notice to pay the rent or surrender the possession, and the nature of the lease or tenancy under which the property is held is immaterial.

"III. The defendants are entitled to a credit of $25.00 being the rental for the month of June 1943, in accordance with the findings of the Court herein. Defendants are not entitled to a credit against the rentals due the plaintiff for the $50.00 paid to the labor union, or for the sum of $28.15 expended upon said property without the knowledge or consent of the plaintiff.

"IV. That the plaintiff is entitled to the judgment of this Court for the sum of Fifteen Hundred Dollars ($1500.00), being the amount the Court found due from the defendants to

the plaintiff; declaring the tenancy under which the defendants hold possession for the real property herein described.''

The judgment awards plaintiff his costs, $1500 damages, and orders that a writ of restitution issue restoring the property to plaintiff.

The findings of the trial court must be sustained if they are supported by substantial evidence and on appeal the presumption is that such findings and the judgment based thereon are correct. Bickford v. Bickford, Mont., 158 Pac. (2d) 796; Whitcomb v. Koechel, Mont., 158 Pac. (2d) 496; Wieri v. Anaconda Copper Min. Co., Mont., 156 Pac. (2d) 838; Cedar Creek Oil & Gas. Co. v. Archer, 112 Mont. 477, 117 Pac. (2d) 265.

Defendants assign error upon the making by the trial court of certain portions of certain of the findings of fact which defendants contend are defective. There is substantial competent evidence to sustain each and all of the trial court's findings. Furthermore, the cause was tried to the court sitting without a jury. The record fails to show any request for findings or any exceptions to those which were made. In such a case the trial court may not be placed in error for failure to make findings not requested nor for defective findings not specifically and particularly excepted to. Sections 9369 and 9370, Revised Codes; Joyce v. McDonald, 51 Mont. 163, 149 Pac. 953; Leake v. Hooten, 88 Mont. 70, 289 Pac. 1043; Valier-Mont L. & W. Co. v. Ries, 109 Mont. 508, 97 Pac. (2d) 584; Sanborn v. Lewis and Clark County, 113 Mont. 1, 120 Pac. (2d) 567.

Defendants contend that it was error for the trial court to conclude that their tenancy was from month to month. It is conceded that upon moving into the property the defendants agreed to pay to plaintiff or his agent the sum of $25 per month. The defendants contend that the agreed monthly installments of $25 each were to apply on the purchase price of the property while plaintiff contends and the trial court found that such agreed monthly installments were

to be for the monthly rent for the use of the property. The defendant Mabel Lester testified that defendants' proposed lease was to be for a term of three years. However, the proposed form of lease and option which defendants caused their attorney to submit to plaintiff for his approval provided for a lease for one year at a rental of $25 per month with an option to purchase. There never was a meeting of the minds on the proposal and plaintiff never approved thereof nor subscribed his name thereto. "But a contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations." Central Bitulithic Pav. Co. v. Highland Park, 164 Mich. 223, 129 N. W. 46, 48, Ann. Cas. 1912B, 719. Except for the allowance of one month's rent of $25 towards repairing the house, defendants wholly failed to pay any other of the monthly installments although defendants continued to occupy the property as their dwelling and place of abode. Section 7744, Revised Codes, provides: "A hiring of * * * a dwelling-house for an unspecified time is presumed to have been made for such length of time as the parties adopt for the estimation of the rent. Thus a hiring at a monthly rate of rent is presumed to be for one month. In the absence of any agreement respecting the length of time or the rent, the hiring is presumed to be monthly." The findings of the trial court recite that no agreement was ever concluded between plaintiff and defendants either as to the term of the lease or for the purchase of the property and such finding is amply supported by the record herein which, in view of the provisions of section 7744, Revised Codes, clearly shows a tenancy from month to month.

"Where a person rents premises at a certain rate per month and holds over for several months, paying the same rent without any new agreement, he becomes a tenant from month to month. If a landlord elects to treat one holding over as a tenant, he thereby affirms the form of tenancy under which the tenant previously held. If that was a tenancy by the month, it will presumptively so continue. In either case the

general rule is that a tenant holding by a verbal letting for an indefinite term at a monthly rental becomes a tenant from month to month." 3 Thompson on Real Property (Perm. Ed.), sec. 1044, p. 51.

"Since a tenant is under duty, it being a covenant express or implied in all leases, to deliver up the premises to the landlord on the termination of a lease, the tenant can hold over rightfully only pursuant to a valid agreement with the landlord. Holding over by the tenant without such agreement of the landlord puts the tenant in the position of being in wrongful possession against the landlord. He is a wrongdoer. Nevertheless, while such possession by the tenant is wrongful, he is not, for technical reasons, immediately a trespasser. He holds over by the laches of the landlord who *at his election* may either treat him as a trespasser or accept him as a tenant. * * * It is optional with a landlord to treat tenant wrongfully holding over as a trespasser or to waive the wrong of holding over and treat him as a tenant. * * * A tenant holding over has no election to regard himself as a tenant; such election is in the landlord." (Emphasis ours.) 32 Am. Jur., Landord and Tenant, secs. 918, 919, pages 778, 779.

Here, after occupying the property as their residence for ██ ██ the month of June, 1943, the defendants continued to hold over after default in the payment of rent and the plaintiff, by serving the notice stating the amount of rent owing and demanding same or the possession of the premises, elected to treat defendants as tenants. In exercising his right of election the landlord was privileged, by express contract and in express terms to make of the tenants so holding over, tenants at will but as the law does not favor a tenancy at will, it will not imply a contract necessary to create such a tenancy. In this state, in the absence of such express agreement, the law implies a tenancy of a more permanent tenure when the landlord exercises his election to allow a tenant, holding over, to remain on the premises. "If a lessee of real property remains in possession thereof after the expiration of the hiring, and

the lessor accepts a rent from him, *the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month, when the rent is payable monthly, nor in any case one year."* (Emphasis ours.) Sec. 7745, Rev. Codes. See also Comegys v. Shreveport Kandy Kitchen, 162 La. 103, 110 So. 104, 52 A. L. R. 931; Donahoo v. Kress, Cal. App. 147 Pac. (2d) 637; Ida., 25 Cal. (2d) 237, 153 Pac. (2d) 349.

"In the case of a prior tenancy from month to month, a tenant, on the election of the landlord so to treat him, becomes or remains a tenant from month to month." 32 Am. Jur., sec. 941, p. 793; see also Annotation 152 A. L. R. 1416.

In their answer defendants allege that on or about June 1, 1943, "the plaintiff and defendants entered into an oral agreement for the purchase of" the described real property "for the sum of Four Thousand Five Hundred Dollars ($4,-500.00) payable at the rate of Twenty-five Dollars ($25.00) per month beginning July 1, 1943, together with interest at the rate of Five Per cent (5%) per annum, computed monthly on unpaid balances; * * *." To perform such alleged contract by the paying of monthly installments of $25 each would require 15 years if all interest were waived. Had such an agreement been made by J. A. Stafford as agent for plaintiff, it would have been invalid under the statute of frauds "unless the authority of the agent be in writing, subscribed by the party sought to be charged." Subdivision 5, section 7519, Revised Codes 1935. Here there was no writing subscribed by plaintiff authorizing the agent Stafford to contract for the sale of the real property involved. The above statute also provides: "The following contracts are invalid, unless the same, or some note or memorandum thereof, *be in writing and subscribed by the party to be charged,* or his agent: 1. An agreement that by its terms is not to be performed within a year from the making thereof. * * * 5. An agreement * * * for the sale of real property, or of an interest therein; * * *." (Emphasis ours.) See also sec. 10613, Rev. Codes.

"The word 'invalid,' as employed in these statutes, means void; of no force or effect. Therefore the contract cannot be relied upon or furnish evidence for any purpose." Dreidlein v. Manger, 69 Mont. 155, 220 Pac. 1107, 1109. "While there are intimations to the contrary of the rule in a few scattered decisions the general rule is that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable. Neither promise is enforceable unless the statute is satisfied. In other words, a parol agreement invalid under the statute is not aided by a further parol agreement to reduce the principal agreement to writing. To allow the enforcement of such an agreement would be tantamount to taking the main contract out of the statute, and as has been said, it is absurd to say that an oral promise in relation to certain subject matter is invalid, but that a promise that the party will thereafter bind himself with respect to the subject matter is valid. Such a construction would be a palpable evasion of the statute, and let in all the evils against which it is directed. * * * The rule that an oral agreement to execute an agreement which is within the statute of frauds or to sign an agreement which that statute requires to be in writing is invalidated by that statute is applicable regardless of the character of the contract which is to be reduced to writing, and applies * * * to oral contracts to execute written contracts for the sale or transfer of interest in land * * *." 49 Am. Jur., Statute of Frauds, 368, sec. 6.

Here there is no writing evidencing any agreement for the sale of the described real property subscribed by either plaintiff or his agent. See A. Stern & Co. v. Avedon & Co., 111 Misc. 372, 181 N. Y. S. 359. Since the making of the alleged oral agreement for the sale and purchase of the property is put in issue by the pleadings, the plaintiff could avail himself of the statute of frauds without pleading same. Bauer v. Monroe, Mont., 158 Pac. (2d) 485. While the evi-

dence falls far short of establishing any valid contract for the purchase of the real property detained, it does establish a hiring at a monthly rate of rent of $25 from which the statute presumes the hiring to be monthly. Secs. 7744 and 7745, Revised Codes.

Defendants urge that the evidence discloses quiet and peaceable possession by the defendants for the period of one year after default in the payment of rent and before proceedings were commenced, contending that thereby this action is barred. Chapter 98 of the Montana Code of Civil Procedure provides for three possessory actions or proceedings, which are summary in character, viz.: (1) Forcible entry, sec. 9887, Rev. Codes; (2) forcible detainer, sec. 9888, Rev. Codes, and (3) unlawful detainer, sec. 9889, Rev. Codes. The instant action is for unlawful detainer brought under the provisions of subdivision 2 of section 9889, Revised Codes, which statute was adopted from the state of California, being the same as section 1161 of the California Code of Civil Procedure. In the early case of Johnson, Lazarus, and Brooks v. Chely, 1872, 43 Cal. 299, 304, an action for unlawful detainer under the statutes of California of 1863 (Act of April 27, 1863, page 652), the Supreme Court of California said: ''The mere fact the defendant having been in the quiet and peaceable possession for one year before the commencement of the suit would not defeat the action in this case. Such a possession would defeat an action counting upon a detainer by actual force * * * the action here, however, is for an unlawful detainer—occurring by reason of occupation continued, with non-payment of rent due, though the rent was demanded within one year after it so became due—* * *.'' As stated in 15 Cal. Jur. sec. 280, page 854, the rule is that quiet and peaceable possession by the defendant for one year before suit does not defeat an action for *unlawful detainer* brought against him as tenant though it is a good defense for *forcible entry* or *forcible detainer*. There is also evidence that in April or May, 1944, being about ten or eleven months after defendants first moved upon the

562

property, plaintiff's attorney came to the back door of the dwelling and there served a notice demanding payment of the rent. Thereafter on August 3, 1944, another notice in writing, stating the amount of rent due and requiring the payment or possession of the property, was served upon the defendant Mabel Lester. It was not error for the trial court to deny defendants' motion to dismiss the action.

Defendants urge that it was error to render judgment ▮▮▮ against the defendant Charles W. Lester, contending that the evidence shows that he "never had any part in the transaction either with Mahoney, Stafford, or the attorney for the defendant, Mabel Lester." This contention is wholly without merit. Both the defendant Charles W. Lester and the defendant Mabel Lester appeared in the action by the same attorney and filed a joint answer to the complaint in which they alleged "that on or about the 1st day of June A. D. 1943, the plaintiff and *defendants* entered into an oral agreement for the purchase of" the described premises; that on June 1, 1943, *the defendants were* given the use and occupancy of said premises; that *the defendants* * * * in order to make occupancy of the dwelling possible, made repairs to the dwelling in the sum of Fifty Three Dollars and Fifteen Cents * * *; that it was agreed that a written contract and option was to be delivered to *the defendants* on or before June 1, 1943, but that the plaintiff failed, neglected and refused to so deliver said written contract * * *. *The defendants* admit that *they* went into possession and occupation of said premises and still continue to hold and occupy same under and by virtue of the said option of purchase and possession * * * and *defendants* further allege that *they* are now ready, able and willing to pay the sum of Three Hundred Forty-six Dollars and Sixty-five cents ($346.65) upon delivery to *them* of the written contract in accordance with the verbal contracts as in Paragraph One hereof alleged * * * the *defendants* admit that *they* have refused to pay rent or surrender possession of said premises and allege that *they* are in possession of said premises under

the above said Contract of Purchase and deny that *they* are under any contract or rental whatsoever * * *." (Emphasis ours.) In the face of such averments and admissions in defendants' pleading, it is idle to contend that the defendant Charles W. Lester "never had any part in the transaction." Johnson v. Butte & Superior Copper, 41 Mont. 158, 108 Pac. 1057, 48 L. R. A., N. S., 938; Safransky v. City of Helena, 98 Mont. 456, 480, 39 Pac. (2d) 644.

In addition to the foregoing admissions in the defendants' pleadings there is also testimony tending to show the husband's connection with the transaction. The defendant Mabel Lester testified that the negotiations were with Mr. J. A. Stafford from whom were obtained the keys for the property. She testified:

"*We* were to pay $25.00 a month on the purchase. * * * *We* took them [the keys] back to him [Stafford] first, and then *we* got them again in your office from him. * * * Well, *we* decided that if *we* could draw a contract, a sort of lease, with option to buy, * * * that maybe *we* could compromise on that * * *.

"Q. Didn't you tell me Mr. Lester was on a deal in Minneapolis whereby he would get the rent and pay it up and have done with it? A. I definitely did not refer to it as rent. * * *

"Q. Didn't you tell me to go and see Mr. Bunker, and wait a matter of two weeks until Mr. Lester could get back, so he could pay that? A. Yes, I asked you to go and call Mr. Bunker, because I felt that he would see about this contract and protect my interest. * * *

"Q. But you wanted a lease for three years, you say? A. Well, that was a tentative agreement.

"Q. At twenty-five dollars a month? A. That is right.

"Q. And then if you decided to buy it, then that was to apply on the purchase price? A. At any time in the three years *we* decided that that would be agreeable."

Defendants' attorney testified: "Later I drew, after talking with Mrs. Lester and Mr. Lester, what was a compromise

agreement.'' In Lewis v. Bowman, 113 Mont. 68, 79, 121 Pac. (2d) 162, 168, a husband claimed ownership of certain property in an action to establish a resulting trust therein. At the trial it was shown that the husband had previously furnished a sworn statement to the county assessor on behalf of his wife in which she claimed ownership of the same property. Respecting such statement this court said: ''The statement was an admission by conduct on the part of plaintiff and is not without significance. It is elementary that the acts and conduct of a party, when inconsistent with his present claims, may be shown against him.'' Again in Carey v. Guest, 78 Mont. 415, 425, 258 Pac. 236, 238, this court said: ''There was much testimony of statements and admissions of defendant, contrary to his interest; * * *. These alone furnish sufficient evidence to sustain the judgment.''

Defendants' answer contains the averment that, ''Defendants further allege that they now tender and offer to pay the said sum of Three Hundred Forty-six Dollars and Sixty-five Cents ($346.65) upon delivery to them of the said Contract of Purchase, as aforesaid.'' Defendants assert that the foregoing constitutes a tender under section 10680, Revised Codes, and that it was error for the trial court to refuse to recognize same as such. We find no merit in this specification. The defendants failed to establish any contract for the purchase of the property and the trial court determined that the transaction resulted in an *indebtedness* of $500 for rent due and owning by defendants for the use of plaintiff's property. It is *payment,* not tender, that is required to discharge or satisfy the debt. Paulich v. Republic Coal Co., 97 Mont. 224, 228, 33 Pac. (2d) 514.

''In the present case the demand for the rent was a clear recognition of the tenancy and established the landlord's acquiescence. It was the legal expression of the landlord's election. Hence the simple question presented here is whether a tenant may hold over, and then, after the landlord has elected to treat him as tenant rather than trespasser, he may,

in the course of the payment of his rent, create a different tenancy by accompanying such payment with conditions. We are clear that he cannot. The payment of the rent was but an incident of an existing tenancy; a tenancy which the law had already created; a tenancy predicated upon the conduct of the parties, without reference to the mental reservations of either.'' Scott v. Beecher, 91 Mich. 590, 594, 52 N. W. 20, 22.

Defendants assign error upon the admission in evidence, ▇▇▇ over defendants' objections, of certain exhibits. No authority is cited to sustain the specifications nor do defendants show how they could have suffered any possible prejudice by receiving the exhibits in evidence. The exclusion of the exhibits would not have enabled defendants to prove the alleged contract for the purchase of the real property upon which they relied but which they were unable to prove. On the other hand, the exhibits did not enable the plaintiff to prove his case for, excluding the exhibits from consideration, the other evidence remaining in the case establishes that upon defendants' promise to pay $25 per month the agent Stafford delivered the keys for the property to defendants who thereupon on June 1, 1943, moved in and commenced to occupy the premises; that the agent with the consent of plaintiff, agreed with defendants that they should not be required to pay the $25 that would otherwise be owing for the first month of their occupancy and in lieu of such payment defendants were to make needed repairs on the property; that since June 1, 1943, the defendants have continuously resided and made their home on the property without paying any of the $25 monthly installments as they became due and that after being served with the statutory three days' notice the defendants, refusing to pay or surrender possession, have been holding over. No prejudicial error resulted from admitting the exhibits in evidence. Under the evidence plaintiff was entitled to prevail and the judgment in his favor is affirmed.

Associate Justices Morris, Cheadle, and Angstman concur.

Former Chief Justice Johnson, who resigned March 31st, 1946, took no part.

Rehearing denied May 14, 1946.