PYLE *v.* ORZELL.

1. LANDLORD AND TENANT—SURRENDER—BURDEN OF PROOF.
    The determination of the facts constituting a surrender of a
    lease by operation of law is ordinarily a matter for the triers
    of the facts, the burden of showing a surrender by a prepon-
    derance of the evidence being upon the party relying on a
    surrender.

2. SAME—SETTLEMENT—SURRENDER—EVIDENCE.
    Mere talk about a settlement does not constitute a surrender of
    a lease and any settlement, if reached, must be paid or at
    least a clear showing made that the .settlement was intended
    to terminate the original lease.

3. SAME—SURRENDER—ABANDONMENT OF PREMISES.
    Finding of trial court that defendant tenant had not .effected
    a surrender of written lease for less than a year either by
    vacating or abandoning the premises or by a mutual agreement
    with the landlord to terminate the original lease *held,* not
    against the preponderance of the evidence in landlord's non-
    jury action for back rent and miscellaneous items.

4. SAME—ABANDONMENT—SURRENDER.
    Merely vacating the premises or abandonment by tenant does not,
    of itself, act to exonerate the tenant under a written lease,
    originally for less than a year, or operate as a surrender
    thereof.

5. SAME—MODIFICATION OF WRITTEN LEASE—SURRENDER.
    Oral modification of written lease of premises for use as dance
    hall on 3 nights per week at rental of $500 per week so as to
    require tenant to pay $200 for Saturday only for one 5-week

REFERENCES FOR POINTS IN HEADNOTES
[1] 32 Am Jur, Landlord and Tenant §§ 901, 905.
[2] 32 Am Jur, Landlord and Tenant § 900.
[3, 4] 32 Am Jur, Landlord and Tenant § 517.
[5] 32 Am Jur, Landlord and Tenant § 147 *et seq.*

period and $150 per week for a second 5-week period, followed
by a repossession by the landlord except for such Saturday
nights *held*, sufficient evidence for trial court to find there
had not been a termination of the original lease which pro-
vided it was subject to termination by 5-weeks' written notice.

Appeal from Wayne; O'Hara (Chester P.), J.
Submitted April 9, 1957. (Docket No. 57, Calendar
No. 46,724.) Decided November 26, 1957. Rehear-
ing denied April 14, 1958. Reconsideration denied
June 11, 1958.

Action by Joan C. Pyle against Charles V. Orzell
for sums claimed due on lease. Judgment for plain-
tiff in reduced amount. Defendant appeals. Af-
firmed.

*Wurzer, Higgins & Starrs (John T. Higgins, John
R. Starrs* and *Robert A. Macdonell,* of counsel), for
plaintiff.

*Gabriel Glantz,* for defendant.

VOELKER, J. Once again we grapple with the knotty
problems which afflict people as they continue in the
face of all warning evidence to the contrary to hope-
fully seek to alter important written legal arrange-
ments by word of mouth. This time our problem
arises under a written lease of a dance hall known
as the Madison Ballroom in the city of Detroit. The
lease was for a term from October 9, 1953, to October
3, 1954, at a rental of $500 for each week end, defined
in the lease as Friday, Saturday and Sunday nights.
The lease gave the tenant the right any time after
the start of 1954 to terminate upon giving 5-weeks'
written notice.

Terpsichore languished in that portion of Detroit
and business was bad; the defendant tenant managed
to pay his weekly $500 faithfully from the inception
of the lease through Christmas, but after that he
paid but $200 for each Saturday night for the period

January 9 through February 6, 1954; and thereafter $150 for each Saturday night from February 13th through March 13th. On the latter date the defendant orally notified the landlord's husband and agent that he no longer intended to use the premises, and in fact did not do so after that.

On May 25, 1954, the landlord commenced this lawsuit, claiming $500 back unpaid rent for the 1954 New Year's week end, $114 for miscellaneous expenses, and rentals at the full rate of $500 weekly under the lease for the period commencing with March 19, 1954 and ending July 7, 1954—the latter date being the termination date under the written notice hereafter mentioned. The defendant's answer alleged an oral cancellation and mutual surrender of the lease during March, 1954, which by reply the plaintiff denied. At the trial before the court without a jury the defendant admitted the item of $500 back rent and the miscellaneous item of $114, totalling $614, but sought to show that the lease was orally cancelled or surrendered on either January 3, 1954, or during the following March, and that any tenancy thereafter was merely from week to week. On June 2, 1954, the defendant's attorney wrote the plaintiff, in part, as follows: "This letter confirms Mr. Orzell's earlier notification to Mr. Pyle that he no longer wishes to lease the Madison Ballroom."

At the trial below the defendant sought to establish by cross-examination of the plaintiff and her husband and by his own testimony that he gave verbal notice to Mr. Pyle on January 3, 1954, that he was through and would have no further use for the dance hall, and that what passed between them then amounted to a cancellation or surrender of the old lease and the substitution of a new oral lease from week to week. Mr. Pyle countered with testimony that he did not agree to cancel the old lease and that he was merely giving the defendant a break because

of poor business and that to temporarily assist him he himself suggested that defendant use the hall only on Saturday nights for a while and that his wife would try to use it on the other days. There was testimony that this oral arrangement was to last but a month at $200 for each Saturday night. There appears no dispute that this oral arrangement for the rental of the dance hall did prevail from January 9th through February 6th, a total of 5 weeks, and thereafter a new oral arrangement prevailed at $150 a Saturday night until the time in March when the defendant finally threw in the sponge—or perhaps we should more accurately say the floor wax.

Defendant further testified and contended below that during March, 1954, he and Mr. Pyle agreed to cancel the lease and settle all accounts for $700, but Pyle denied this and it does not appear that the $700 or any amount in settlement that was discussed was in fact ever paid. It also appeared below that commencing with the weekend of March 12, 1954, the plaintiff landlord herself used the premises to give, for a price, week end afternoon roller-skating parties for children (there was also at least one Friday evening), keeping the premises free, however, on Saturday evenings, and that this user continued until early in June.

The court below held that no proper cancellation or surrender of the lease had been shown by the defendant and he found for the plaintiff for 15 weeks (15 Saturday nights up to July 6, 1954, under the written notice of termination) at the orally reduced rate of $150 (not the full leasehold rate of $500 per week claimed by the plaintiff), or $2,250, to which amount he added the $614 conceded by defendant, giving total judgment for $2,864, from which the defendant has appealed here.

The defendant here contends that what happened between him and plaintiff's husband constituted a

surrender of the original lease by operation of law either on January 3, 1954, or during March, 1954. In support of his position he urges that the landlord by orally reducing the rental in January, as noted, thereby supplanted the old written lease by a new week-to-week oral lease; that the discussion of possible settlement terms between them amounted to a demand on the part of the landlord for a lease termination payment which in turn amounted, in legal effect, to an acquiescence in the surrender; that even if the lease were not supplanted in January it was surely surrendered in March because the tenant then quit the premises entirely, no demand for rent was ever made on him, no notice was given him that the premises were being occupied on his behalf, and the plaintiff's books of account at the trial failed to show that defendant owed plaintiff money. The defendant urges that under such circumstances oral notice of surrender, if accepted, is sufficient.

The main trouble with these and the other claims made by the defendant here is not so much with his view of the law—which appears for the most part to be fairly and accurately stated—but with the facts, which the court below seems mostly to have found against him. As we read this record it appears clear that the court below found that there was an insufficient showing made by the defendant that what passed between him and the plaintiff's husband amounted to a cancellation or surrender of the lease, whether by operation of law or otherwise.

The determination of the facts constituting a surrender of a lease by operation of law is ordinarily a matter for the triers of the facts and, further, the burden of preponderately showing those facts is normally upon the party relying on a surrender. We have no doubt that the defendant earnestly wanted out; that he genuinely hoped he was getting out; but we must observe that this business of sur-

render is not a one-way street; there 'must also be concurrence by the occasionally uncooperative landlord. To hold otherwise would be for us to vainly attempt to discourage all conversations and informal traffic between landlords and their tenants who might be in trouble; to thereby imperil all leases and penalize all landlords who dared ever relent and give their faltering tenants any sort of break; and, finally, simply to be unrealistic and loftily perfectionist about a very ancient human situation. We suspect that landlords and tenants will in the future still continue to complicate their arrangements whatever we judges may say. Mere talk about settlement, however, does not constitute a surrender; any settlement, if reached, must be paid or at least a clear showing made that the settlement was intended to terminate the original lease. The fact that after suit was started the defendant's own attorney felt impelled finally to send a written notice of termination—despite his not unobserved nice attempt therein to soften and relate back the effect of it—does little to additionally convince us that the court below reached a wrong result either on his findings of fact or on his law.

In Michigan in order to show the surrender of a lease either by operation of law or in fact (sometimes called an express surrender) mutual agreement must be shown. (See, generally, *Stewart* v. *Sprague,* 71 Mich 50; 51 CJS, Landlord and Tenant, §§ 121, 124; *Wray-Austin Machinery Co.* v. *Flower,* 140 Mich 452.) Mere vacating or abandonment of the premises does not of itself act to exonerate the tenant or operate as a surrender (*Huntington* v. *Parkhurst,* 87 Mich 38 [24 Am St Rep 146]; *Noble* v. *Sturm,* 210 Mich 462); mutual agreement to terminate the original lease must also be made out.

The court below appears to have found an oral modification of the lease as to rental payments with-

out a waiver of the termination clause, made for a temporary period due to the tenant's financial difficulties, and that any limited repossession made by the landlord was done in recognition of and dependence upon this oral agreement as to rent and time of user. The court expressly found that there was no cancellation or surrender of the original lease. We hold that such an oral arrangement as made here under these circumstances does not necessarily operate to cancel or surrender the original lease. There appears to be adequate testimony in this record to sustain the findings below. In any case we find ourselves unable to say that the evidence—as the phrase goes—clearly preponderates in the opposite direction. The judgment must accordingly be affirmed, with costs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.