William A. WINSHALL, Plaintiff,

v.

AMPCO AUTO PARKS, INC., and American Building Maintenance Industries, Defendants.

Civ. A. No. 4–72997.

United States District Court, E. D. Michigan, S. D.

July 19, 1976.

Robert J. Harris, Harris, Lax, Goldman & Gregg, Ann Arbor, Mich., for plaintiff.

Robert H. Janover, Freud, Markus, Slavin, Toohey & Galgan, Troy, Mich., for defendants.

Carl H. von Ende, Miller, Canfield, Paddock & Stone, Birmingham, Mich., for intervenor, Detroit Bank and Trust Co.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action for breach of contract by the lessor of a parking garage against the lessee. The lessee stopped paying rent, repudiated the lease, and surrendered the keys to the lessor. It contends, however, that certain acts of the lessor released it from liability.

\*   \*   \*   \*   \*   \*

In this case, the court established a schedule for the development of facts and stipulation, and cross motions for summary judgment were filed.[1] The question to be decided on defendants' motion is whether the lessor's re-entry onto the garage premises and resumption of business released the lessee from liability from the time of re-entry.

\*   \*   \*

*Factual Background*

On June 23, 1972, a 15-year lease agreement was signed between the Winshall Real Estate Trust, as lessor, and Ampco Auto Parks, Inc., as lessee. The leased property, located at 1776 Randolph Street in downtown Detroit, is a 320-car parking structure known as the Grand Circus Garage.

\*   \*   \*  [2,3]

By letter dated February 27, 1974, Ampco repudiated the lease and terminated as of April 1, 1974. \* \* \* Winshall accepted the key to the premises, and he immediately began operating the business there. He rejected Ampco's offer to continue its tenancy on a month-by-month basis, being unwilling to relet except by a long-term lease

---

1. The court has jurisdiction of this case under 28 U.S.C. § 1332.

   The record on which these motions are made includes all the pleadings, depositions, affidavits, answers to interrogatories, and documents referred to by the parties in their briefs on these cross motions for summary judgment.

2, 3. \* \* \*

agreement. Winshall did not protest Ampco's repudiation of the lease until September 30, 1974.

### Acceptance of Surrender by Operation of Law

Relying on the uncontested facts that Winshall accepted possession of the Grand Circus Garage on April 1, 1974, refused a month-by-month tenancy with Ampco, re-entered and operated the business himself continuously thereafter, failed to protest Ampco's abandonment immediately, and was interested only in reselling or reletting on a long-term basis—all in the context of a lease agreement having no survival clause [4] —Ampco argues that Winshall accepted surrender of the leasehold by operation of law, releasing Ampco from any liability for rent.

■■■ The concept of acceptance of surrender by operation of law may be traced back to the requirement, under the statute of frauds, that interests in real property could not be transferred except by signed writing or by operation of law. It allows a parol transfer by the lessee of real property to operate as a surrender of the lease if it has the consent of the lessor. *Logan v. Anderson*, 2 Doug. (Mich.) 101 (1845). It is a property concept, appropriately raised as a defense in an action *for rent* by a landlord against a tenant who has surrendered the premises back to his landlord.

■■■ Were this an action for rent, it is doubtful that the facts on record would show Ampco accepted surrender by operation of law.[5] Winshall, however, has not sued for rent, but for *damages* flowing from breach of the lease agreement. At the heart of Ampco's defense is its argument that a defense based on the landlord's acceptance of surrender is applicable to an action for damages. The court holds that it is not.

■■■ An action for damages flowing from breach of contract ought not to be confused with an action for rent. In a contract action, the landlord may collect only actual damages flowing from the breach, and he has a duty to mitigate those damages. In an action for rent, the landlord has no duty to mitigate, and, unless he accepts the surrender of the premises, he has a right to collect the full amount of the rents due under the breached lease.

A prudent landlord will take affirmative steps to reduce his losses from abandoned premises. If he proceeds by way of an

---

4. A survival clause permits the continuation of the tenant's liability even after the landlord relets.

5. A landlord does not accept surrender of leased premises by entering them to preserve the business and the property. Even in an action for *rent*, in which the landlord does not have a duty to mitigate, the law encourages efforts by property owners to reduce damages flowing from the abandonment of the property, and "such efforts should not be construed against the party making them." *Scott v. Beecher*, 91 Mich. 590, 595–96, 52 N.W. 20, 22 (1892); C. T. McCormick, *The Rights of the Landlord Upon Abandonment of the Premises by the Tenant*, 23 Mich.L.Rev. 211, 214 (1925). Winshall's re-entry and resumption of business are not sufficient in themselves, therefore, to show a surrender by operation of law. Winshall is experienced in the management of parking garages, and his assumption of the Grand Circus Garage operation was a responsible reaction to Ampco's abandonment and repudiation of the lease. It had the effect of reducing Winshall's damages and of preserving a busi-ness enterprise of value to the community. It would serve no good purpose to penalize Winshall on this ground, and the law does not so require. *Scott, supra.*

Nor is Winshall's refusal to relet to Ampco on a monthly basis conclusive evidence of an intent to exclude Ampco from the premises. A landlord is under no obligation to capitulate to a tenant's demand for a new tenancy. See *Scott, supra.* By Ampco's admissions, there is no dispute that Winshall made efforts to resell the garage or to relet it on a long-term basis. This is sufficient evidence that Winshall was not excluding Ampco from resuming the tenancy *on the terms agreed to in the lease.*

Under Michigan law, Winshall was not required to protest Ampco's abandonment. Michigan requires mutual agreement of landlord and tenant to a surrender by operation of law, and this regardless of whether the lease contains a survival clause. *Pyle v. Orzell*, 350 Mich. 298, 303, 86 N.W.2d 163 (1958). The burden is on the party relying on a surrender to show mutual agreement to the surrender. *Pyle, supra*, at 302, 86 N.W.2d 163.

action for *rent*, however, he stands in a precarious position:

"If the landlord simply stands aside when the tenant abandons possession, the lease relation, and hence the tenant's liability for rent properly so-called, continues, but if the landlord, as a man of prudence, attempts to utilize the premises by resuming possession or re-letting them, he will, unless he is exceedingly careful, incur the risk of terminating that relation and with it the liability of the tenant for rent, either upon the theory of (1) surrender, or (2) exercise of power of forfeiture, where that is reserved in the lease, or (3) eviction." *McCormick, supra* note 5, at 216.[6]

A landlord seeking to recover his losses in an action for *rent* is therefore permitted "to stand idly by the vacant, abandoned premises and treat them as the property of the tenant and recover full rent." *Id.* 222. In an action for damages, on the other hand, the landlord must assume legal obligations which do not burden him in an action for rent; but he may rely upon his right to recover his actual losses that could not be reduced by his own reasonable efforts.

Thus, there are substantial differences between the two forms of action, in the burden of proving losses, in the potential recovery, and in the duties imposed by law upon the parties. Ampco seeks to obscure those differences and to engraft the cumbersome doctrine of surrender onto the body of contract law.

 No public policy would be served and no social benefits would be derived from such a development of the law. A landlord, in an action for rent, suffers no penalty for allowing his premises to stand vacant. On the other hand, the duty to mitigate that accompanies the landlord's right to recover damages for breach of contract has the socially desirable effect of encouraging the landlord to relet aban-

doned premises and to make constructive use of them.

The court has found no Michigan case in which the surrender doctrine has been applied to a contract action. Ampco urges the court to follow *Anderson v. Andy Darling Pontiac, Inc.*, 257 Wis. 371, 43 N.W.2d 362 (1950), in which the surrender doctrine was applied to a contract action. The court does not believe that *Anderson* expresses sound policy. The court does not believe that Michigan would follow *Anderson*, and therefore it would be inappropriate for this court to do so. Accordingly, the defendants' motion for summary judgment is denied.

\*   \*   \*   \*   \*   \*

So ordered.

Professor McCormick. However, the Michigan landlord is able to collect full rent in an action for rent, even after allowing his premises to stand idle and unoccupied after abandonment.

---

6. As Michigan law requires mutual agreement for acceptance of surrender, *see* note 5, *supra*, the Michigan landlord is not in quite so precarious a position as the landlord described by